Exhibit 12: Motion for Grand Jury Materials

Roy A. Jacobson, Jr., WSB 5-1791
Noah W. Drew, WSB 7-4888
Claire Fuller, WSC 7-6071
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
T: 307-733-7290
F: 307-733-5248
jacobson@spencelawyers.com
drew@spencelawyers.com
fuller@spencelawyers.com

*Attorneys for Debra Hinkel*

## IN THE SECOND JUDICIAL DISTRICT COURT
## IN AND FOR ALBANY COUNTY, WYOMING

| | |
|---|---|
| In the matter of the GRAND JURY INVESTIGATION OF THE NOVEMBER 4, 2018 DEATH OF ROBERT MICHAEL RAMIREZ | Civil No. _____ <br><br> **MOTION FOR LIMITED INTERVENTION:  RELEASE OF GRAND JURY MATERIALS – EXPEDITED RELIEF REQUESTED** |

### INTRODUCTION

Debra Hinkel, as the duly appointed Wrongful Death Representative of Robert Michael Ramirez, deceased, pursuant to Civil No. 35089 in the Second Judicial District Court in and for Albany County, Wyoming; and as the Administrator of the Probate Estate of Robert Michael Ramirez, hereby brings this motion to seek release of confidential grand jury material in connection with ongoing federal civil litigation. Ms. Hinkel brings this motion out of particularized need seeking the release of all transcripts, all exhibits and evidence, all expert materials, and all ministerial records of the grand jury that was convened to investigate the death of her son, Robert

Michael Ramirez. In the alternative, Ms. Hinkel seeks the release of those materials the Court finds appropriate at this time with leave to renew this Motion in the future.

As the Court is likely aware, this matter stems from shooting death of Robert Ramirez ("Robbie") by Albany County Sheriff's Deputy, Derek Colling. Following Robbie's death, Albany County Attorney Peggy Trent, with the approval of this court, empaneled a Grand Jury for the purpose of reviewing the actions of Deputy Derek Colling. No indictment was found by the Grand Jury, and the jurors were released from duty.

On September 1, 2020, Debra Hinkel filed an action against Derek Colling, Sheriff David O'Malley, the Albany County Board of Commissioners, and Albany County John Does I-X in the United States District Court for the District of Wyoming, Case No. 20-CV-0016 before the Honorable Nancy Freudenthal. The federal action is based on the November 4, 2018, shooting of Robert Ramirez by Deputy Derek Colling. That action brings claims pursuant to 43 U.S.C. § 1983 for excessive force; inadequate hiring procedures; unconstitutional policy, practice, custom or usage; failure to train; failure to supervise; and ratification; claims under Wyo. Stat. § 1-39-112 for wrongful death; and claims for exemplary/punitive damages. A copy of this complaint is attached hereto as Exhibit 1. Ms. Hinkel brings this motion now – out of substantial need – because the defendants in the federal action are defending that case under assumed regularity of the grand jury proceedings, when it appears in all likelihood the use of the grand jury was anything but regular.

## BACKGROUND

On November 4, 2018, Robert Michael Ramirez ("Robbie") was shot and killed by Albany County Sheriff's Deputy Derek Colling ("Defendant Colling"). Ex. 1 at ¶ 1. Prior to November, 4, 2018, Defendant Colling shot and killed two other individuals while in the line of duty with the

Las Vegas Metro Police Department "LVMPD." Ex. 1 at ¶ 37. Defendant Colling was eventually fired from the Las Vegas Metro Police Department for viciously beating an innocent bystander who was videoing Defendant Colling performing an arrest. Ex. 1 at ¶¶ 38-39. Despite a significant public outcry, Defendant Colling was hired by Albany County as a Deputy in the Sheriff's Office. Ex. 1 at ¶¶ 44-51.

Immediately following the shooting, the Wyoming Department of Criminal Investigation ("DCI") investigated the shooting to determine whether any crimes had been committed by Defendant Colling. Ex. 1 at ¶ 95. However, prior to the conclusion of the DCI investigation, on November 8, 2018, Albany County Attorney Peggy Trent ("Attorney Trent") began the process of empaneling a Grand Jury to investigate "the shooting and whether it was justified and whether criminal charges should be field against Corporal Derek Colling." Ex. 2, January 14, 2019 Press Conference Transcript at 7:3-5; 14:15-16.[1] Sometime prior to December 18, 2018, the County had decided to hire experts to testify at the grand jury. Ex. 3, Privilege Log at Nos. 1, 3.[2]

At least two experts were hired for the purposes of providing expert testimony before the grand jury, Eric Daigle and Dave DuBay. Ex. 2, at 6:16-19; Ex. 4 at p. 2-3. Eric Daigle of the Daigle Law Group is, among other things, an expert in the areas of use of force by law enforcement who, as Movant understands it, exclusively defends police officers in civil rights litigation. Ex. 6, Daigle Law Group Website; Ex. 7, Sentinel Article. Dave DuBay is also an expert witness in the areas of use of force by law enforcement who defends police officers in civil litigation. Ex. 2 at 6:16-19; Ex. 4 at p. 2-3. Mr. DuBay was also the Chief Strategy officer for TASER International

---

[1] The video of this press conference can be viewed at https://www.youtube.com/watch?v=XxqgO6vd9Bg.
[2] This privilege log accompanies a motion to quash filed by Albany County, as a defendant in the federal civil litigation, directed to a subpoena issued by Plaintiff to obtain the files of Mr. Dave Dubay and Mr. Eric Daigle. This motion is pending before the Federal District Court, and a copy if it, and Plaintiff's Response in Opposition, are attached as Exhibits 4 and 5.

from 2003 to 2006, which is the manufacturer of the AXON body camera and AXON electronic control device (a/k/a TASER) used by Defendant Colling when he killed Robbie. Ex. 8, LinkedIn; Ex. 9, Taser Press Release. According to Attorney Trent, the purpose of Mr. Daigle and Mr. DuBay testifying at the grand jury was testify as to the national standards of use of force by law enforcement officers in application to Defendant Colling's actions and to matters concerning the video footage and TASER usage by Defendant Colling. Ex. 2 at 6:16-19.

In preparation for their testimony, Attorney Trent sent the two experts the video footage from the dash and body camera's that recorded Defendant Colling killing Robbie. Ex. 4 at pp. 3-4, 6-7. Attorney Trent also sent Mr. DuBay the actual AXON body camera and Taser used by Defendant Colling. *Id.* Attorney Trent also appears to have given the two experts an outline of their anticipated testimony to the Grand Jury. *Id;* Ex. 3 at pp. 10-11.

Following the Grand Jury, Attorney Trent held a press conference on or about January 14, 2019, wherein she declared that all criminal investigation was done and the decision to not file charges was final. Ex. 2 at 26:4-6; 33:20-21. As such, the need for secrecy was diminished. *Id.* at 25: 2-13; 26: 1-20. Perhaps most important about the press conference is that Attorney Trent claimed that she had removed herself from the civil aspects that were anticipated to arise from the shooting, thereby portraying the purpose of the grand jury was only for criminal investigation. *Id.* at 10: 24-11:3; 11:9-11; 16:22-23; 17:113-18. This contradicts the County's current position that materials prepared for the grand jury were also prepared in anticipation of civil litigation: "[t]he material sought by the plaintiff … was prepared in litigation and for litigation in the Grand Jury proceeding…. All of the material in both expert witness's files was prepared for the Grand Jury…[and] civil litigation was certainly anticipated by Albany County." Ex. 4 at p. 16.

Various public record requests were issued following Robbie's death, both to Albany County and to DCI seeking evidence of the shooting. In response to requests for video footage of the incident, Albany County claims it no longer possesses the video of the dash or body camera footage and that possession of the videos are with DCI. Ex. 10, Trent Response to Request Letter. DCI did produce videos in response to the public records request, however the videos were altered from the original format.[3] Ex. 11, Request Letter to DCI, Ex. 12 Response from DCI, Ex. 13, DCI Video Still; Ex. 14, Video Still from Boomerang. The discrepancies in the video are very troubling as Attorney Trent claimed that "[w]e have preserved all of the evidence….[n]othing will…be destroyed." Ex. 2 at 19:1-3.

In relation to Movant's federal case, she named a number of John Does. Ex. 1 at ¶¶ 17-22, The John Does are alleged to have been Defendant Colling's supervisors and involved in the hiring, retention, and supervision of him or were involved in the post incident investigation of the shooting. *Id.* Her complaint further alleges claims of unconstitutional hiring and retention, unconstitutional claims related to failure to train and supervise, unconstitutional policy and/or custom, and ratification. *See* Ex. 1. After discovery commenced, Ms. Hinkle subpoenaed the expert files of Mr. Daigle and Mr. Dubay and further sought all communications between them and the County. The County has moved to quash the subpoena claiming that the experts were also hired in anticipation of civil litigation and that the expert materials and expert communications are subject to the attorney-client privilege, attorney work product doctrine and grand jury secrecy. *See* Ex. 5 and Ex. 6. No decision has been issued by the Court in that action.

---

[3] The video produced from DCI no longer includes crucial data recorded at the time of the shooting. A comparison of Ex 13, DCI Still, and Ex. 14, Boomerang Still, demonstrates that the time, speed and GPS data have since been removed from the video.

**BASIS FOR MOTION**

Grand jury secrecy is not absolute. *See Douglas Oil Company v. Petrol Stops Northwest,* 441 U.S. 211, 223, 99 S.Ct. 1667, 1675 (1979); *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Company,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Like its federal counterpart, Wyoming Rule of Criminal Procedure 6(a)(14)(B) provides with the discretion to limit the extent of grand jury secrecy:

> [W]hen so directed by a court preliminary to or in connection with a judicial proceeding….

Wyo. R. Crim. P. 6(1)(14)B).

In *Douglas Oil,* the Supreme Court outlined the standards for determining when grand jury materials could be disclosed:

> The party seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.... [D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure.... [A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.

441 U.S. at 222–23, 99 S. Ct. at 1674–75.

Ms. Hinkel brings this motion under Wyo. Stat. § 7-5-208 and Wyo. R. Crim. P 6(a)(14), as informed by the Federal Rules of Civil Procedure. Wyoming Courts can and do rely on interpretations of Federal Rules to interpret Wyoming Rules. "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *Lamar Outdoor Adver. v. Farmers Co–Op Oil Co.,* 2009 WY 112, ¶ 12, 215 P.3d 296, 301 (Wyo. 2009); *see also Bratton v. Blenkinsop* (*In re Guardianship of Bratton*), 2014

WY 87, ¶ 24 n. 6, 330 P.3d 248, 253 n. 6 (Wyo. 2014) ("Because of the similarities between federal and Wyoming rules of civil procedure, we look to federal authority interpreting a particular rule as an aid in applying the comparable Wyoming rule.").  A motion for grand jury proceedings made pursuant to Federal Rule of Criminal Procedure 6(e) is "essentially a civil proceeding." *In re Special Grand Jury* 89-2, 450 F.3d 1159, 1169 (2006) (quotations omitted). The proper court in which to bring the motion is the court in which the Grand Jury was convened, as that court is "in the best position to determine the continuing need for grand jury secrecy." *Douglas Oil Co v. Petrol Stops Northwest,* 441 US 211, 226 (1979); Fed. R. Crim. P. 6(e)(3)(F).

The provisions of the Wyoming Statutes and the Wyoming Rules of Criminal Procedure governing the confidentiality of grand jury proceeding are nearly identical to the Federal Rules. Specific to this motion, which is a motion for release of grand jury materials "in connection with a judicial proceeding" as permitted by Wyo. R. Crim. P. 6(a)(14), the federal rule is identical in the circumstances in which grand jury materials may be disclosed: "in connection with a judicial proceeding." Fed. R .Crim. P. 6(e)(3)(E)(i).[4] Moreover, using the federal rules as guidance for the release of grand jury materials under state law and state rules is common:

> The state jurisdictions that permit courts to order disclosure of grand jury materials in connection with other judicial proceedings have almost uniformly followed the federal rule requiring a showing of "particularized need" before disclosure will be ordered the courts in those states have followed the lead of the U.S. Supreme Court and other federal courts in defining the term "particularized need."

§ 5:12. Particularized need, Grand Jury Law and Practice § 5:12 (2d ed.).

---

[4] Ms. Hinkel has given notice to the Albany County Attorney and the parties to the federal civil litigation. *See* Fed. R. Crim. P. 6(e)(3)(F). Pursuant to both Fed. R. Crim. P. 6(e)(3)(F) and the Wyoming Rules Governing Court Access, this Court has discretion to entertain responses from all interested parties.

Lastly, it is well within this Court's discretion to order release of grand jury materials. In *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S. Ct. 1667, 60 L.Ed.2d 156 (1979), the Supreme Court held "a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Id.* at 223, 99 S. Ct. at 1675; *see also In re Lynde*, 922 F.2d 1448, 1451 (10th Cir. 1991).

## ANALYSIS

Undersigned counsel acknowledges the awkward task of seeking the release of materials that may or may not exist because there is no public docket, register of actions, or the like for the grand jury that was convened to investigate the death of Robert Ramirez. On information and belief, Ms. Hinkel has a basis to assert that the following materials related to the grand jury may exist:

1. Register of Actions/Docket Sheet
2. Motion to Convene;
3. Order to Convene;
4. Exhibits, including demonstratives;
5. Extrinsic Witness Statements;
6. Expert Reports;
7. Jury Instructions;
8. Report of Grand Jury;
9. Motion to Close/Release Grand Jury;
10. Order to Close/Release Grand Jury;
11. Verdict/Bill/Indictment Form; and
12. Transcripts of Proceedings or recording pursuant to Wyo. R .Crim. P. 6(a)(10).

This list may be incomplete.

Of the items on this list, transcripts of proceedings are subject to grand jury secrecy as "matters occurring before the grand jury." A report of the grand jury and factual findings are also subject to grand jury secrecy. Motions, orders, and jury instructions are ministerial records not subject to grand jury secrecy. Exhibits and expert reports are also not subject to secrecy obligations. With this motion, Movant requests the Court to release all materials not subject the grand jury secrecy provision and within the District Court Case Record/File and for an order unsealing to those materials the Court finds to be subject to grand jury secrecy.

I.    MINISTERIAL RECORDS AND EXTRINSIC EVIDENCE GIVEN OR PRESENTED TO THE GRAND JURY ARE NOT SUBJECT TO SECRECY SHOULD BE RELEASED BY THE COURT

The bounds of what material is subject to grand jury secrecy is clearly defined: Wyo. R. Crim. P. 6(a)(14) extends to "matters occurring before the grand jury" and the obligation of secrecy only extends to the attorney for the state, and "a juror, attorney, interpreter, stenographer, operator of a recording device or any typist who transcribes recorded testimony… [n]o obligation of secrecy may be imposed upon any person except in accordance with this rule." Wyo. R. Crim. P 6(a)(14). Similarly, Wyo. Stat. 7-5-208 outlines the exact same bounds on the obligations of secrecy and what material is subject to secrecy. There is no obligation of secrecy on grand jury witnesses.

It is clear that grand jury secrecy only applies to "matters before the grand jury." It does not apply to anything else like ministerial records, grand jury instructions, evidence obtained outside the proceeding, witness statements made in the absence of the grand jury, and memorandums and physical evidence not generated by the grand jury. *See U.S. v. Diaz*, 236 F.R.D. 470, 475-76, (N.D. Cal. 2006) (granting access to ministerial records relating to grand jury's empanelment and jury instructions; denying access to grand jury voting records); *United States v. Belton*, 2015 WL 1815273 (N.D. Cal. 2015) ("The legal instructions given to the grand jury

regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect."); *U.S. v. Fuentes*, 2008 WL 2557949 (E.D. Cal. 2008)(holding defendants are entitled to transcript of grand jury instructions without a showing a particularized need); *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990)(documents not shown to the grand jury cannot constitute grand jury materials); *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988)(report commissioned before grand jury proceeding began does not reveal the "inner workings of the grand jury, such as witnesses, or the substance of testimony of the direction and strategy of the investigation"); *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987)("When documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings, nor is it an interference with the grand jury as a principal tool of criminal accusation."); *Sisk v. C.I.R.*, 791 F.2d 58, 86-1 U.S. Tax Cas. (CCH) P 9433, 58 A.F.T.R.2d 86-5044 (6th Cir. 1986) (even when submitted to the grand jury, an investigative report is not a matter occurring before the grand jury if the report was made independently of the grand jury's investigation).

On the issue of ministerial records, the Wyoming District Court for the District of Wyoming has unequivocally held that the ministerial records of a federal grand jury can be disclosed. *United States v. Reed*, No. 1:12-CR-0058-SWS, 2015 WL 12915108, (D. Wyo. May 4, 2015); *In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002); *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3rd Cir. 1990). In making the ruling in *Reed,* Judge Skavdahl wrote:

> A ministerial record is one that generally relates to the procedural aspects of the empaneling and operation of the grand jury, such as the commencement and termination dates of a grand jury. *In re Special Grand Jury*, 674 F.2d 778, 779 n.1 (9th Cir. 1982); *In re Grand Jury Investigation*, 903 F.2d at 182. The standard for

allowing disclosure is "whether disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations." *In re Grand Jury Proceedings, Special Grand Jury 89–2*, 813 F. Supp. 1451, 1469 (D. Colo. 1992). The purpose of Rule 6(e) is to protect the confidentiality of the grand jury's hearings and deliberations, and the term "matters occurring before the grand jury" is interpreted to include anything that will reveal what transpired during the grand jury proceedings. *See In re Cudahy*, 294 F.3d at 951 (citing cases from various circuit courts). The disclosure of these materials is discretionary with the court. *Special Grand Jury 89–2*, 813 F. Supp. at 1469.

*United States v. Reed*, No. 1:12-CR-0058-SWS, 2015 WL 12915108, at *1 (D. Wyo. May 4, 2015).

**_Expert Reports & Exhibits_**. Movant submits that expert report and exhibits are not "matters before the grand jury" as such materials are prepared outside the presence of the jury and are designed to assist the jury, not determine the jury. Here, Attorney Trent described the role of the experts she retained as "provid[ing] insight into national standards and how it should be done in the use of deadly force." Ex. 2 at 6:17-19. But the matter before the grand jury was the "criminal charge of involuntary manslaughter. The policy issues is a different issue, different area." *Id.* at 24:17-20.

From Exhibit 3, the privilege log produced in response to subpoenas in the federal civil ligation, it appears that both experts, Mr. Dubay and Mr. Daigle, authored reports. It is not clear if those reports were shown to the grand jury in part or in whole. If the reports were not shown to the jury, grand jury secrecy cannot apply. *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990)(documents not shown to the grand jury cannot constitute grand jury materials). Even if the reports were shown to the grand jury, the report is not a matter before the grand jury. Review of the privilege log shows this: Mr. Dubay's report was sent to Ms. Trent on January 6th, 2019, before the grand jury was empaneled. See Exhibit 3 at p. 7. Mr. Daigle's report was transmitted to Ms. Trent on January 6th. *Id.* at pg. 8. The grand jury did not begin until January 8th. Ex. 2 at 14:15-16. These reports were clearly made independently of the grand jury's investigation and are

therefore not subject to grand jury secrecy. *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988)(report commissioned before grand jury proceeding began does not reveal the "inner workings of the grand jury, such as witnesses, or the substance of testimony of the direction and strategy of the investigation"); *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987)("When documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings, nor is it an interference with the grand jury as a principal tool of criminal accusation."); *Sisk v. C.I.R.*, 791 F.2d 58, 86-1 U.S. Tax Cas. (CCH) P 9433, 58 A.F.T.R.2d 86-5044 (6th Cir. 1986) (even when submitted to the grand jury, an investigative report is not a matter occurring before the grand jury if the report was made independently of the grand jury's investigation). These reports should be released.

*__Ministerial Records.__* The legal standards for the release of ministerial records relating to a grand jury are clear: no secrecy applies. These records should be released.

Pursuant to the findings of the Wyoming District Court for the District of Wyoming in *Reed*, supra, the ministerial records of the grand jury are not subject to grand jury secrecy and may be freely disclosed. Thus, any court records relating to register of actions/docket sheets, the term of the grand jury and attendance of grand jurors, including excusal and use of alternative jurors, the dates in the grand jury was in session, and the length of each session should be disclosed to Movant. The open nature of this information is highlighted in comments made by Attorney Trent. In a press conference held on January 15, 2019, Attorney Trent described many of the ministerial aspects of the grand jury:

> It was January 8th is the date we selected to start the grand jury and select the grand jury. Jurors were called to the room. They thought they were appearing for a criminal matter. . . They convened, so the jury was selected on January 8th.

Evidence started to commence on the 8th and continued on the 9th and 10th, and then they deliberated on the 10th and reached their decision.

Ex. 2 at 14:17-20; 14:5-15:3.

Further, any instructions given to the grand jury should be released as jury instructions are not subject to grand jury secrecy because such instructions do not reveal any actual deliberation. *United States v. Belton*, 2015 WL 1815273 (N.D. Cal. 2015). To the extent that deliberations can be divined from the content of instructions given to the grand jury, the need for secrecy has ceased since the criminal investigation has concluded.

II. **MS. HINKEL HAS THE REQUIRED PARTICULARIZED NEED FOR DISCLOSURE OF GRAND JURY MATERIALS OTHERWISE SUBJECT TO CONFIDENTIALITY UNDER WYO. R. CRIM. P. 6(A)(14) AND WYO. STAT. § 7-5-208**

Together, Wyo. R. Crim. P. 6(a)(10) & (14) and Wyo. Stat. § 7-5-208 provide for two distinct obligations of secrecy: the district attorney has a discreet obligation of secrecy with one discretionary exception allowing for release of grand jury proceedings to law enforcement; and "a juror, attorney, interpreter, stenographer, operator of a recording device or any typist who transcribes recorded testimony" has an obligation of secrecy unless directed otherwise by the court. No other obligation of secrecy may be imposed by any other person. Wyo. Stat. § 7-5-208, Wyo. R. Crim. P. 6(a)(14).

While there is a dearth of case law in Wyoming interpreting these obligations of secrecy, the corresponding federal rules have been interpreted in great detail. The United States Supreme Court held that release of grand jury materials may be granted with a showing "particularized need." *Douglas Oil Co. of California v. Petrol Stops Nw.,* 441 U.S. 211, 212, 99 S. Ct. 1667, 1669, 60 L. Ed. 2d 156 (1979). Particularized need encompasses three parts: a party seeking release "[1] must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3]

that there request is structured to only cover material so needed." *Id.* at 222. In essence, disclosure

is only appropriate when the need for it outweighs the public interest in secrecy, and the burden

on showing this balance is on the party seeking disclosures. *Id.* at 222. But this is not strict

balancing act: "is a highly flexible one, adaptable to different circumstances and sensitive to the

fact that the requirements of secrecy are greater in some situations than in others." *U.S. v. Sells*

*Engineering*, *Inc*. 463 U.S. at 445, 103 S.Ct. at 3149.

The timing of when a motion for release of grand jury materials is made can affect the

balance of particularized need. *Douglas Oil Co. of California v. Petrol Stops Nw.,* 441 U.S. 211,

223, 99 S. Ct. 1667, 1675, 60 L. Ed. 2d 156 (1979)("as the considerations justifying secrecy

become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden

in showing justification."); *SEC v. Everest Management Corp.,* 87 F.R.D. 100, 104

(S.D.N.Y.1980) ("After a grand jury's investigation has terminated, most of the reasons for grand

jury secrecy are no longer applicable and the others are less compelling.") The considerations

justifying secrecy primarily address protection in the criminal context:

> In particular, we have noted several distinct interests served by safeguarding the
> confidentiality of grand jury proceedings. First, if preindictment proceedings were
> made public, many prospective witnesses would be hesitant to come forward
> voluntarily, knowing that those against whom they testify would be aware of that
> testimony. Moreover, witnesses who appeared before the grand jury would be less
> likely to testify fully and frankly, as they would be open to retribution as well as to
> inducements. There also would be the risk that those about to be indicted would
> flee,or would try to influence individual grand jurors to vote against indictment.
> Finally, by preserving the secrecy of the proceedings, we assure that persons who
> are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218–19, 99 S. Ct. 1667, 1672–

73, 60 L. Ed. 2d 156 (1979).

The balancing required under particularized need is also affected by the position of the

parties in the connected judicial proceeding for which grand jury materials are sought:

"[P]articularized need" becomes "strong" … when there has been prior unlimited release to one party in the litigation of the grand jury transcript and materials. In that case, disclosure is in order not merely to assure the accuracy of the testimony but also "to equalize the access to relevant facts which each side possesses" and to eliminate the obvious unfair advantage, arising from affording only one side "exclusive access to a storehouse of relevant fact." Beyond this, it is contrary to the wholesome spirit of modern federal procedure to deny to one party evidence available to the other party. Such a procedure is too much like providing arms to one adversary and denying it to the other.

*In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1302–03 (4th Cir. 1986)(quotations in original).

The most common instance of particularized need is to impeach a witness, to refresh recollection, or to test credibility. For impeachment use, "The reality of the need can be shown by pointing to actual inability to recall relevant information or examples of inconsistent testimony on material issues." *In re Special Grand Jury 89-2*, 143 F.3d 565, 571 (10th Cir. 1998).

Lastly, the nature of the materials sought can affect the balance between secrecy and disclosure. § 5:12. Particularized need, Grand Jury Law and Practice § 5:12 (2d ed.). Documents are more easily disclosed than testimony. *Id.*; *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1088 (7th Cir.1982)( "when a particular document is sought only 'for its own sake—for its intrinsic value in the furtherance of a lawful investigation,' it does not necessarily constitute a matter occurring before the grand jury.").

   a.   ***The parties to the ongoing federal civil litigation have disparate access to the information and knowledge about the grand jury, causing injustice to Ms. Hinkel as the Plaintiff in the federal civil litigation.***

Albany County is a defendant in the federal civil litigation. As an entity, Albany County derives its knowledge from its officers and agents, including Albany County Attorney Peggy Trent and the county attorney's office. As such, Albany County has the "obvious unfair advantage, arising from affording only one side exclusive access to a storehouse of relevant facts" that the

court found unjust in *In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1302–03 (4th Cir. 1986). This injustice has already become an issue in the federal civil litigation: Ms. Hinkel, in her capacity as the Plaintiff in the federal civil litigation, served subpoenas on the two expert witnesses retained by the Albany County Attorney to present opinion testimony before the grand jury. Copies of these subpoenas are attached as Exhibit 16. Albany County, as a defendant in the federal civil litigation, has moved to quash these subpoenas, on the basis of attorney-client privilege, attorney work-product protection, and grand jury secrecy. See Ex. 4. While the motion to quash is not before this Court, it is evidence of the disparate access to information between the plaintiff and the defendants in the federal civil litigation.

Similarly, Attorney Trent has personal knowledge of the testimony given before the grand jury, and the discourse between herself, the jury, and any witnesses. This personal knowledge allows her, as an officer of Albany County, to evaluate any testimony in the federal civil litigation against testimony given before the grand jury for impeachment. Ms. Hinkel does not have this ability. This unequal knowledges places Ms. Hinkel at a significant disadvantage in the federal civil litigation, and places Albany County at a distinct advantage in the federal civil litigation.

Sheriff David O'Malley is a named defendant in the federal civil litigation, and he and his office may also have knowledge of the grand jury proceedings that is not available to Plaintiff. Attorney Trent has the discretion to release grand jury information under Wyo. R. Crim. P 6(14)(A) to law enforcement as "essential to the public interest and effective law enforcement." Employees of the Sheriff's office may also have provided testimony to the grand jury and interacted with the jurors, Attorney Trent and/or the hired expert witnesses. There is evidence showing that the expert witnesses retained by Attorney Trent for the grand jury, Eric Daigle and Dave Dubay, continued their work for the County long after the conclusion of the grand jury. *See* Exhibit 4,  showing

communications between Attorney Trent and Mr. Daigle on January 25th, 26th, 27th, and 31st of 2019; and between Attorney Trent and Mr. Dubay on April 14th, 2019; despite the grand jury being concluded on January 10, 2019; Ex. 2 at 15:3. A fair and reasonable explanation of this continued communication is that Attorney Trent was exercising her discretionary powers under Wyo. R. Crim. P 6(14)(A) to release grand jury information to further law enforcement, specifically to O'Malley and counsel for O'Malley. Ex. 3 at p. 13, No. 49. Therefore, Attorney Trent is not the only officer or agent of Albany County that has personal knowledge of the grand jury: she shared this information with others within the County. Additionally, there is evidence that the Attorney General's office may have received information from Attorney Trent related the grand jury and its decision not to indict. Ex. 3 at p. 13, No. 49. The Attorney General's Office now represents Defendant Colling.

Courts have reflected on this inequality, finding that "it is contrary to the wholesome spirit of modern federal procedure to deny to one party evidence available to the other party. Such a procedure is too much like providing arms to one adversary and denying it to the other." *In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1302–03 (4th Cir. 1986). Such an injustice is "justifiable only by the clearest and most compelling circumstances." *Dennis v. United States,* 384 U.S. 855, 873–4, 86 S.Ct. 1840, 1850–1, 16 L.Ed.2d 973 (1966).

**b.** **The need for disclosure is greater than the need for continued secrecy because the criminal investigation has concluded and time has passed since the grand jury was convened.**

The primary concern for the secrecy of the grand jury materials being sought has passed, as the criminal investigation concluded on January 10, 2019. Ex. 2 at 15:3. Attorney Trent conducted a press conference following the conclusion of the grand jury investigation and determination. *See* Ex. 2. In the press conference, Attorney Trent emphasized that the investigation

was concluded, diminishing the need for secrecy. Attorney Trent even contemplated filing a motion herself to release the grand jury materials:

> PEGGY TRENT: The criminal investigation is complete. Grand jury has made a decision. I have nothing further to deal with the criminal aspect. Now it's moving to the civil arena, which is personnel and civil liability. So to me, just like any felony or criminal case, I would release what is necessary, and in the statute says I may release it, and I believe I no longer have a reason. I knew early on when we had done the press conference I was moving in that direction and I knew I was going to and could not release it because we were analyzing that footage.
> SPEAKER: Now, is any of the evidence the grand jury going to be --
> PEGGY TRENT: No. All of that is sealed right now. That will be up to the civil attorneys eventually. I do anticipate filing a motion to unseal it, but at this point I'm not doing that.

Ex. 2 at 26:4-21. This acknowledgement that the need for secrecy has lessened lowers the burden the parties seeking disclosure must meet. *See Douglas Oil Co. of California v. Petrol Stops Nw.,* 441 U.S. 211, 223, 99 S. Ct. 1667, 1675, 60 L. Ed. 2d 156 (1979)("as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.").

The need for the disclosure of the grand jury transcripts in this matter outweighs the need for continuing secrecy. This case is unique insofar as there is an absence of potential harm that could result from disclosing the grand jury matter. The criminal action against Colling has been resolved, and no investigation is ongoing. Nor would disclosure harm law enforcement efforts. The criminal action was based on a single isolated encounter, making any evidence unrelated to other criminal investigations. Further, the witnesses to the grand jury are either professional retained witnesses or professional law enforcement witness for the Wyoming Attorney General's Office – who now represents Colling in the civil matter.

### c. There is clear particularized need for the transcript in order for Ms. Hinkel to properly prosecute her case in the federal civil litigation.

The release of the entire grand jury transcript or recording, while all-encompassing, is carefully structured only to cover material needed by Movant. As shown above, Albany County, through its county attorney—who is an officer and agent of the county—has full knowledge of the grand jury proceedings, including all "matters before the jury" and can revisit the proceedings freely, as the County Attorney's office is the custodian of any transcript or recording of grand jury proceedings. Wyo. R. Crim. P. 6(a)(10). There is a good faith basis to believe this information was shared with others in the county, including with Sheriff David O'Malley, who is a defendant in the federal civil litigation, and the Attorney General's Office who represents Defendant Colling. Ms. Hinkel's particularized need for this material is to avoid injustice in the federal civil litigation; and any need for secrecy is outweighed by the passage of time since the grand jury convened and the conclusion of the criminal investigation. Ms. Hinkel seeks the entire transcript because the it is the position, knowledge, and statements of Albany County via its officer and agent Attorney Trent, that Ms. Hinkel needs to avoid injustice.

Ms. Hinkel does not know if Defendant Colling or Sheriff David O'Malley appeared before the grand jury. If either did, the same need applies to the testimony of those witnesses, as each is a defendant in the federal civil litigation. Ms. Hinkel must be able to review their grand jury testimony in order to evaluate their testimony in the civil case for consistency.

Further, Ms. Hinkel pleaded allegations in the federal civil litigation against John Does as those persons "responsible for the investigation into the death of Robbie Ramirez." Ex. 1 at ¶ 20. How the grand jury was instructed, what evidence it heard, and how that evidence was presented are critical to understand the bounds of the investigation, which was directed by the County through the County Attorney. If the investigation conducted by the grand jury had access to

evidence has since been lost or destroyed, a John Doe or John Does may be identified with a thorough understanding of what materials the grand jury was provided. There is strong evidence that video evidence available to the grand jury is no longer available. Further, how evidence was presented to the grand jury for use in its investigation is crucial to identifying the identity of any John Does "responsible for the investigation into the death of Robbie Ramirez." Ex. 1 at ¶ 20. All testimony is indicative of how evidence was presented to the grand jury and is relevant to the John Doe claims. This evidence is also relevant to Plaintiff's ratification claims: was evidence developed and presented to the Grand Jury done solely for criminal prosecutorial reasons or was— as is now indicated—the evidence that was presented was also developed for this civil action. The entire transcript of the grand jury should be released.

## CONCLUSION

In consideration of the legal standards and analysis herein Movant seeks an order from this Court as follows:

(1) Releasing all grand jury materials, including transcripts of proceedings, and allowing disclosure by those persons subject to an obligation of secrecy under Wyo. R. Crim. P 6(a)(14)(A), subject to any protective measures as is necessary; or

(2) Identifying all materials, including transcripts of proceedings, that are subject to grand jury secrecy, and granting Movant leave to seek release of those materials individually; or

(3) Any other relief the Court deems fit.

Dated this <u>19th</u> day of February, 2021.

THE SPENCE LAW FIRM, LLC

ROY A. JACOBSON, JR. (WSB #5-1791)
NOAH W. DREW (WSB #7-4888)
CLAIRE FULLER (WSB #7-6071)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 19th day of February, 2021, I served this document electronically via email and USPS Certified Mail, Return Receipt Requested, on the following persons:

| | |
|---|---|
| Jesse B. Naiman, WSB No. 7-5516<br>Timothy W. Miller, WSB No. 7-2704<br>Wyoming Attorney General's Office<br>2320 Capitol Avenue<br>Cheyenne, WY 82002<br>(307) 777-5547<br>(307) 777-8920 facsimile<br>jesse.naiman@wyo.gov<br>adrian.kowalski@wyo.gov<br><br>*Attorneys for Derek Colling, individually in the Connected Federal Case* | Kay Lynn Bestol, WSB No. 5-2949<br>Noah S. Grovenstein, WSB No. 7-6010<br>Sundahl, Powers, Kapp & Martin, LLC.<br>1725 Carey Avenue<br>P.O Box 328<br>Cheyenne, WY 82003<br>(307) 632-6421<br>kbestol@spkm.org<br>ngrovenstein@spkm.org<br><br>*Attorneys for David O'Malley, individually in the Connected Federal Case* |
| John D. Bowers WSB No. 6-3090<br>Bowers Law Firm, PC<br>PO BOX 1550<br>Afton, WY 83110<br>(307) 885-1000<br>(307) 885-1002 facsimile<br>john@1000.legal<br><br>*Attorneys for Albany County Board of Commissioners in the Connected Federal Case* | Thomas A, Thompson WSB No. 6-2640<br>Terisa Marie Oomens, WSB No. 7-6496<br>MacPherson & Thompson, LLC<br>P.O Box 999<br>616 W. Buffalo<br>Rawlins, WY 82301<br>(307) 324-2713<br>(307) 234-7348 facsimile<br>tthompson@wyomingattorneys.net<br>toomens@wyomingattorneys.net<br><br>*Attorneys for Derek Colling in his official capacity, and David O'Malley in his official capacity in the Connected Federal Case* |
| Jay A Jerde, WSB 6-2773<br>Special Assistant Attorney General<br>3230 Capitol Ave<br>Cheyenne, WY 82002<br>(307) 777-7895<br>(307) 777-6869 facsimile<br>Jay.jerde@wyo.gov<br><br>*Attorney for Wyoming Attorney General Bridget Hill in Her Official Capacity in the Connected Federal Case* | Ms. Peggy Trent<br>Albany County Attorney<br>525 E Grand Ave<br>Laramie, WY 82070<br>(307) 721-2552<br>(307) 721-2554<br><br>*Duly Elected County Attorney for Albany County (**NOT SERVED VIA EMAIL, TO BE SERVED PERSONALLY**)* |

THE SPENCE LAW FIRM, LLC