Roy A. Jacobson, Jr., PC (WSB# 5-1791)
Noah W. Drew (WSB# 7-4888)
Claire Fuller (WSB# 7-6071)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street
PO Box 548
Jackson, WY 83001
P: 307-733-7290
F: 307-733-5248
jacobson@spencelawyers.com
drew@spencelawyers.com
fuller@spencelawyers.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT WYOMING

| | |
|---|---|
| DEBRA R. HINKEL, as the duly appointed Wrongful Death Representative for the Estate of Robert Michael Ramirez, deceased; and as the duly appointed Administrator of the Probate Estate of Robert Michael Ramirez, deceased; | Civil No. 20-CV-166-NDF |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY** |
| DEREK R. COLLING, individually and in his official capacity; DAVID O'MALLEY, individually and in his official capacity as the Sheriff of Albany County, Wyoming; ALBANY COUNTY BOARD OF COMMISSIONERS, a Wyoming body corporate and politic; and ALBANY COUNTY JOHN DOES I-X, real names unknown, in their individual and official capacities; | |
| Defendants. | |

## I.     INTRODUCTION

1.     On the morning of November 4, 2018, Albany County Sheriff's Deputy Derek R.

Colling shot and killed Robert "Robbie" Michael Ramirez in front of Robbie's home.  Ostensibly

stopped for the most minor of traffic infractions, failing to signal a left turn, Robert "Robbie"

Michael Ramirez was visibly unarmed at the time he was killed while posing no immediate threat to Defendant Colling or any other member of the public. Robbie died from two gunshot wounds to the back that were fired by Defendant Colling while Robbie lay helpless on the ground.

2. Nearly thirty years before Defendant Colling killed Robbie Ramirez, the United States Supreme Court established that the Fourth Amendment to the United States Constitution provides protection against excessive force by a law enforcement officer. *See Graham v. Connor*, 490 U.S. 386, 386–87 (1989). Nearly thirty-four years before Defendant Colling killed Robbie Ramirez, the United States Supreme Court further clarified that, "[w]here a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

3. By November of 2018, the 10th Circuit Court of Appeals clearly established that the use of a Taser on nonviolent individuals is unreasonable. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir., 2007). By November of 2018, the 10th Circuit Court of Appeals had clearly established that a Taser is not to be used on a suspect who does not present an imminent threat or danger before an arrest is attempted. *Perea v. Baca*, 817 F.3d 1198, 1202–03 (10th Cir., 2016).

4. Based on the use of excessive deadly force against Robbie Michael Ramirez, Defendants are liable for his death under the Fourth Amendment to the United States Constitution. Defendants are likewise liable under Wyoming state law for the negligent and willful and wanton misconduct resulting in the death of Robbie Ramirez.

## II.    PARTIES

5. At all times material herein, Robert Michael Ramirez, deceased ("Robbie Ramirez" and/or "Robbie"), was a citizen and resident of Wyoming.

6. Debra R. Hinkel is the mother of Robert Michael Ramirez, deceased.

7. Debra R. Hinkel is a citizen and resident of Wyoming and brings this lawsuit as the duly appointed Wrongful Death Representative of Robert Michael Ramirez, deceased, and as the Administrator of the Probate Estate of Robert Michael Ramirez, deceased, with all the attendant powers and obligations provided by Wyoming Law.

8. Defendant Derek R. Colling ("Defendant Colling"), at all times material herein, was an agent and employee of Albany County, Wyoming, working as a deputy at the Albany County Sheriff's Office ("ACSO"). He is sued in his individual and official capacities.

9. At all material times, Defendant Colling was an agent and employee acting under the color of state law and within the scope of his employment with Albany County, Wyoming, and he is being sued individually and in his official capacity. As an agent, servant and employee of Albany County, Defendant Colling was acting under the supervision of Defendant O'Malley and/or one or more of the Albany County John Does I-X.

10. Upon information and belief, Defendant Colling is a citizen and resident of Wyoming.

11. Defendant David O'Malley ("Defendant O'Malley"), at all times material herein, was the Sheriff of Albany County, Wyoming and was an elected officer, agent and employee of Albany County, Wyoming with final policymaking authority.

12. Defendant O'Malley was an employee acting under the color of state law within the scope of his statutory authority and employment with Albany County, Wyoming, with supervisory duties at the ACSO. Defendant O'Malley was Defendant Colling's commanding officer, responsible for Defendant Colling's training, supervision and conduct, and is alleged to have acted under the color of state law.

13.     Defendant O'Malley is also responsible for enforcing the regulations of the ACSO and for ensuring that ACSO law enforcement personnel obey the laws of the State of Wyoming and the United States of America.  As the leader of law enforcement administration, Defendant O'Malley is responsible for the department's operational administration as well as its planning and research efforts, fiscal management, training initiatives, and Professional Standards.  He is sued in his individual and official capacities.

14.     Defendant Albany County Board of Commissioners ("Albany County") is a governmental entity organized under the laws of the State of Wyoming and is a person pursuant to 42 U.S.C §1983.

15.     Defendant Albany County, through its agents and employees, is responsible for hiring, training, supervising, and instructing all levels of law enforcement personnel in the performance of their duties.

16.     Defendant Albany County is a body corporate and politic and is designated as such in accordance with Wyo. Stat. § 18-2-101.  Therefore, Albany County is subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its officers, employees, and agents or ostensible agents under Wyoming law.

17.     The true names of Albany County John Does I-X are presently unknown to Plaintiff.  Plaintiff is informed and believes that each of said Albany County John Does I-X are or were at all relevant times citizens of the State of Wyoming and were either agents, ostensible agents, servents, and/or elected officials of Albany County, Wyoming.

18.     Plaintiff is further informed and believes that some—if not not all—Albany County John Does I-X have final policy-making authority for Albany County, Wyoming, and/or the ACSO.

19.     Plaintiff is further informed and believes that each of said Albany County John Does I-X in some way, manner or form, and to some extent caused detriment, damage and injury to Robert Micheal Ramirez, deceased, and/or Plaintiff as alleged, and that only Defendants Albany County, Sheriff David O'Malley, and/or Deputy Derek Colling know or have reason to know the true identities and capacities of said John Does.

20.     It is further believed that the Albany County John Does I-X were either Defendant Colling's supervisors at the ACSO responsible for his training and supervison; or employees and/or agents of Albany County responsible for Defendant Colling's hiring, firing, and retention as an ACSO employee; or responsible for  investigation into the death of Robbie Ramirez.

21.     At all material times, Albany County John Does I-X are alleged to have been acting under the color of state law, and Plaintiff brings this lawsuit against the Albany County John Does I-X in their individual capacities and/or official capacities.

22.     Plaintiff will seek leave of this Court to amend this Petition to include the true names of the Albany County John Does I-X as soon as such information becomes known to Plaintiff.

23.     Each and every act of Defendants was by and under the color of law and pretense of statutes, ordinances, regulations, law, custom, and usage of Albany County, Wyoming, and was by virtue under the authority of the Defendant's employment or agency relationship with Albany County, as an entity and within the scope of their employment and duties.

### III.     JURISDICTION AND VENUE

24.     This action arises under the laws of the State of Wyoming and the United States Constitution, particularly under the provisions of the Fourth Amendment to the United States

Constitution and under the Civil Rights Act, 42 U.S.C. §§ 1983, 1988.

25.     This Court has federal question jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. §§ 1331, 1343.

26.     This Court has supplemental jurisdiction over Plaintiff's state tort law claims pursuant to 28 U.S.C. § 1367 as they are so related to claims in this action within original jurisdiction that they form part of the same case or controversy.

27.     Venue is proper in this Court pursuant to 28 U.S.C §1391 because the Defendants reside within the District of Wyoming.

28.     Venue is proper in this Court pursuant to 28 U.S.C §1391 because the acts and omissions complained of occurred in the District of Wyoming.

29.     On or about June 26, 2020, Notices of Claims (dated June 19, 2020) were filed and served upon Defendants in compliance with the Wyoming Governmental Claims Act, including Wyo. Stat. § 1-39-113(c)-(d), and were in compliance with the signature certification requirements of Article 16, Section 7 of the Wyoming Constitution.

### IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

30.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

### *Background: Defendant Colling Knew Robbie Ramirez from Childhood*

31.     Robert "Robbie" Ramirez was born in 1979, in Laramie, Albany County, Wyoming.  He attended elementary, middle, and high school in Laramie and was involved in sports (including hockey and baseball) throughout his school years.

32.     Defendant Colling also grew up in Laramie, Wyoming and attended the same schools and played on many of the same sports teams as Robbie.  Defendant Colling and Robbie

also sang in the high school choir together.

33.     Upon information and belief, Robbie and Defendant Colling had known each other since elementary school and both graduated from Laramie High School in 1999.

34.     While enrolled at the University of Wyoming, Robbie was diagnosed with Schizoaffective Disorder.  Robbie was prescribed and took medications for his mental illness.

35.     Concerned for the safety of Robbie, other mentally ill individuals, and law enforcement, Plaintiff Debra R. Hinkel initiated and coordinated a law enforcement educational training program on how to safely and effectively deal with mentally ill individuals.  The community program was shared with the Albany County Sheriff's Office.

36.     Upon information and belief, most—if not all—Albany County law enforcement personnel from the ACSO and the Laramie Police Department were aware of Robbie's mental health struggles.

### Defendant Colling's History of Excessive Force

37.     Prior to working with the Albany County Sheriff's Office, Defendant Colling worked for the Las Vegas Metro Police Department ("LVMPD").  During his near six-year employment with the LVMPD, Defendant Colling was directly involved in the shooting death of two individuals:

> a.  07/09/2006 shooting death of a man (Shawn Collins) who had been reported by both his ex-wife and then-girlfriend for threatening them at their respective residences in the same evening.  Defendant Colling fired seven rounds at the victim.

> b.  09/29/2009 shooting death of a mentally-ill 15-year-old adolescent male (T. Orton) who suffered from bi-polar disorder and ADHD.  Despite the mother's

pleas to law enforcement officers at the scene (including Defendant Colling) not to shoot her son and that her son could be talked down and was not dangerous, Defendant Colling shot the boy in the head as he stood behind his mother.

38.     Upon information and belief, Defendant Colling was terminated from the LVMPD in December 2011 after an eight-month investigation surrounding charges of use of excessive force, police brutality, and false arrest.

39.     Upon information and belief, Defendant Colling was terminated for assaulting and unlawfully arresting Mitchell Crooks, a bystander filming Defendant Colling and other officers who were responding to a call in front of Mr. Crooks' house.  When Mr. Crooks refused to stop filming, Defendant Colling brutally beat and tasered Mr. Crooks then arrested him unlawfully. Mr. Crooks eventually filed a personal injury lawsuit that settled for substantial taxpayer monies with the City of Las Vegas.

40.     Upon information and belief, Defendant Colling moved back to Laramie, Wyoming after being terminated from the LVMPD.

41.     Upon information and belief, upon returning to Wyoming, on or about March 7, 2013, Defendant Colling attended the Wyoming Law Enforcement Academy where he received top academic and shooting recognition and ranked number one in his class for physical fitness.

42.     Defendant Colling's accomplishments at the Wyoming Law Enforcement reflect the extensive training and instruction he received as well as his deep understanding of accepted law enforcement standards, protocols, practices, and underlying principles/tactics.  Such education and knowledge necessarily includes the use of Tasers, use of non-deadly force, use of deadly force, the use of force continuum, vehicle stops, and de-escalation tactics.

43.     Upon information and belief, Defendant Colling is a "black belt" level instructor for the mixed martial art of Krav Maga—Hebrew for "contact combat." Krav Maga is a military self-defense and fighting system developed for the Israel Defense Forces and Israeli security forces derived from a combination of techniques sourced from Aikido, Boxing, Wrestling, Judo, and Karate.

### *The Hiring Process: O'Malley Knew or Should Have Known Colling Was Unfit*

44.     Upon information and belief, Defendant Colling sought employment with the City of Laramie Police Department and other law enforcement agencies.

45.     Upon information and belief, the City of Laramie Police Department and other law enforcement agencies rejected employment applications by Defendant Colling, deeming him unqualified to serve.

46.     Defendant Colling ultimately sought employment as a deputy with the ACSO.

47.     Upon information and belief, Defendant O'Malley directly supervised and controlled Defendant Colling's employment application and hiring process, including conducting employment history and background checks.

48.     Upon information and belief, Defendant O'Malley was unduly influenced by his friendship with Defendant Colling's father, Richard Colling, a Wyoming Highway Patrol Officer. Defendant O'Malley was made aware of Defendant Colling's tainted employment history and ultimate termination with the LVMPD, including his involvement in the shooting deaths of two individuals and Taser abuse with a third.

49.     Upon information and belief, following Defendant Colling's employment with the ACSO, Defendant O'Malley was made aware of Evie Oquendo's (the mother of T. Orton, deceased) strong conviction against Defendant Colling's hiring with the ACSO due to the troubling

circumstances surrounding Defendant Colling's shooting of her son and his subsequent firing. Ms. Oquendo voiced these concerns publicly through Laramie and Albany County media outlets.

50.     Other individuals within Albany County also voiced concerns about Defendant Colling's employment with the Albany County Sheriff's Office, putting Defendant O'Malley and/or the Albany County John Does on further notice that Defendant Colling was unfit for hire.

51.     Upon information and belief, at all material times, Defendant O'Malley was directly warned that Defendant Colling was a "loose cannon" with an out-of-control temper rendering him unfit to serve in law enforcement.  Defendant O'Malley was also advised that Defendant Colling needed mental health care and treatment for such issues.

52.     Despite these warnings, Defendant O'Malley hired and retained Defendant Colling to work as a detention officer at the Albany County Detention Center.

53.     Upon information and belief, Defendant Colling worked as a detention officer at the Albany County Detention Center for approximately one year before being moved to the position of Patrol Deputy at the ACSO.

54.     When Defendant O'Malley and/or Albany County John Does transferred Defendant Colling to the patrol deputy position, they knew Defendant Colling's reckless propensity to use excessive force and his proven incapacity to perform de-escalation tasks rendered Defendant Colling unfit for the role.  Despite this knowledge, Defendant O'Malley and/or Albany County John Does sent Defendant Colling out on patrol with the public at large.

### The Shooting: Robbie Ramirez Was Unarmed and Shot Three Times, Including Twice in the Back

55.     On November 4, 2018 at approximately 12:35 p.m., Robbie was driving his 2006 yellow Ford Ranger pickup truck (with a black camper shell over the bed of the truck) on Grand Avenue in Laramie, Wyoming.  Defendant Colling (in his ACSO patrol vehicle) began following

Robbie, alleging that Robbie was driving at a slow speed and impeding traffic.

56.     As shown in Defendant Colling's dash camera video, Robbie continued on Grand Avenue, then turned left onto 21st Street after signaling his intent to do so.  Defendant Colling followed Robbie onto 21st Street.

57.     As shown on Defendant Colling's dash camera video, Robbie turned left again onto Garfield street without signaling, at which point Defendant Colling activated his overhead lights to initiate a traffic stop.  Defendant Colling contacted ACSO Dispatch to provide Robbie's license plate number and request identification of the vehicle's driver.  When Defendant Colling activated his lights, Robbie pulled over.

58.     After Robbie pulled over, Defendant Colling failed to wait for a response from ACSO Dispatch before approaching Robbie's vehicle.

59.     Defendant Colling's dash camera and body camera recorded Defendant Colling's patrol car rolling to a stop behind Robbie's truck.  Before coming to a full stop, Defendant Colling had already opened his driver's side door and partially hung his left leg out the door.  Defendant Colling exited his patrol vehicle and approached the rear of Robbie's truck, then immediately crossed behind the truck and walked quickly to the front passenger-side window.

60.     Defendant Colling's cameras recorded Defendant Colling using his right hand to knock on the front passenger-side window of Robbie's vehicle while yelling at Robbie to roll his passenger-side window down.  ACSO policy requires that Tasers be worn on the non-dominant side, so Defendant Colling's Taser was on his right side because Defendant Colling is left-hand dominant.  Defendant Colling's dominant left hand was intermittently resting on his service revolver holstered at his waist while he waited outside the passenger-side door of Robbie's truck.

61.     Defendant Colling later reported that Robbie wanted Defendant Colling to come to

the driver-side window that was already rolled down. Defendant Colling refused, so Robbie pointed towards a nearby building, communicating that he lived there. Because Robbie's vehicle contained manually-operated windows, to comply with Defendant Colling's request, Robbie would have had to reach across the passenger side seat to manually roll down the passenger side window, placing Robbie at perceived unreasonable risk from Defendant Colling.

62.     Defendant Colling's dash camera and body camera recorded Defendant Colling radioing for back up as Robbie, with no intent whatsoever to flee or elude Defendant Colling, slowly pulled away from the traffic stop to drive to his home, across the street a mere approximate 150 feet away.

63.     Defendant Colling's dash camera and body camera then recorded Defendant Colling running to his patrol car, pulling away from the curb, and positioning his patrol vehicle closely behind Robbie's truck.

64.     Defendant Colling's dash camera and body camera recorded Robbie parking his vehicle, turning it off, and slowly stepping out of his vehicle while staying within a few feet of his front door in Defendant Colling's plain view.

65.     Defendant Colling's dash camera and body camera recorded Defendant Colling parking his patrol vehicle closely behind Robbie's truck and quickly exiting while holding his gun in his left hand and his Taser in his right hand.

66.     Defendant Colling's dash camera recorded Defendant Colling aggressively charging toward Robbie, pointing both weapons directly at Robbie.

67.     Defendant Colling's dash camera and/or body camera recorded Defendant Colling ordering Robbie to "get your hands up now."

68.     Defendant Colling's dash camera recorded Robbie standing and facing Defendant

Colling with both of his hands out and clearly visible.

69.     Although Robbie's hands were visible and in plain sight, Defendant Colling continued to aggressively charge toward Robbie.

70.     At all relevant times, Defendant Colling's dash camera and body camera showed that Robbie was unarmed.

71.     At all relevant times and by Defendant Colling's own admission, Defendant Colling believed Robbie to be unarmed.

72.     Neither of Defendant Colling's cameras nor related audio recorded Defendant Colling communicating any clear or reasonable warning that Robbie was under arrest or that non-compliance would result in being tasered.

73.     Neither of Defendant Colling's cameras nor related audio recorded Defendant Colling giving Robbie a reasonable chance to submit to questioning or arrest prior to being tasered.

74.     Defendant Colling's dash camera recorded Defendant Colling charging Robbie and firing his Taser at Robbie twice: once in the stomach region and once towards Robbie's face at near point blank range.

75.     Video from Deputy Colling's body camera and dash camera show Robbie defensively swatting at the Taser wires in fear his life as he was backed into the space between his truck and the wall of his home with no feasible means of escape.

76.     Then, without any reasonable explanation, Defendant Colling's body camera cuts to black and stopped showing video.

77.     Both individuals then disappeared out of range of Defendant Colling's patrol car dash camera for several seconds before reappearing in front of Defendant Colling's patrol car.

78.     When Defendant Colling and Robbie reappeared in the dash camera, it captured the

shooting.

79.    Defendant Colling's dash camera shows Defendant Colling firing his first shot at Robbie, which missed, while Robbie was attempting to defend himself.

80.     Defendant Colling's dash camera shows Defendant Colling firing a second shot, which hit Robbie under his right armpit.

81.    Defendant Colling's dash camera shows that the second shot caused Robbie to fall forward toward the ground in a prostrate-like position.

82.    Defendant Colling's dash camera shows that as Robbie was falling toward the ground, Defendant Colling fired a third shot, which missed.

83.    Due to the second shot entering his right armpit, Robbie was incapacitated and defenseless when his body hit the ground.

84.    Defendant Colling's dash camera shows that after Robbie hit the ground, Defendant Colling took two steps back and fired two more rounds into Robbie's back.

85.    At the time Defendant Colling fired the two shots into Robbie's back, Robbie was incapacitated and defenseless.

86.    Defendant Colling knew or should have known that after he had struck Robbie with a bullet, Robbie would be incapacitated and defenseless.

87.    Separate and apart from the two gunshot wounds to Robbie's back, the gunshot wound to Robbie's armpit was a survivable wound.

88.    Separate and apart from the gunshot wound to Robbie's armpit, the gunshot wounds to Robbie's back were the cause of Robbie's death.

89.    Defendant Colling made no effort to provide medical attention for Robbie. Had Robbie received timely medical care and attention for the first gunshot wound, he would have

survived.

90.     Defendant Colling did not suffer injury or evidence of a physical altercation.

91.     The physical confrontation between Defendant Colling and Robbie, which led to Robbie's death by shooting, was set in motion by Defendant Colling's unjustified and aggressive misconduct.

92.     There was no reasonable factual or legal justification for Defendant Colling to taser Robbie.

93.     At all material times, Robbie had the right to reasonably defend himself once he was unjustly and illegally tasered and attacked by Defendant Colling.

94.     At all material times, Robbie did not act in any manner that constituted a threat of imminent harm or death to Defendant Colling, any member of the public, or to public safety.

### *Flawed Investigation: No Criminal Charges Filed*

95.     Following the Wyoming Department of Criminal Investigation's ("DCI") investigation, Defendants O'Malley, Albany County, and/or Albany County John Does I-X purportedly investigated the November 4, 2018 shooting to determine whether to discipline or pursue criminal charges against Defendant Colling.

96.     Defendants O'Malley, Albany County, and/or Albany County John Does I-X had the opportunity to refer the prosecution of potential criminal charges against Defendant Colling to another prosecuting agency within Wyoming, yet ultimately chose not to.

97.     Defendants O'Malley, Albany County, and/or Albany County John Does I-X convened a grand jury and presented professional witness opinions and/or testimony who were paid to provide unduly biased testimony about the reasonableness of Defendant Colling's actions.

98.     Defendants O'Malley, Albany County, and/or Albany County John Does I-X

manipulated and/or coerced testimony of non-retained expert witnesses during the grand jury process.

99.     Despite shooting and killing Robbie, Defendant Colling faced no criminal charges of any kind.

100.     Following the DCI investigation, Defendants O'Malley, Albany County, and/or Albany County John Does I-X did not discipline Defendant Colling.

101.     Following the DCI investigation, Defendants O'Malley, Albany County, and/or Albany County John Does I-X promoted Defendant Colling from a patrol unit to an investigation unit.

102.     Upon information and belief, Defendant O'Malley and/or the Albany County John Does failed to perform an internal investigation into the circumstances surrounding Robbie's death, including whether Defendant Colling violated ACSO policy and procedure or whether Robbie's state or federal constitutional civil rights were violated.

103.     Upon information and belief, Defendant O'Malley and/or the Albany County John Does failed to perform a shooting review board inquiry into the circumstances surrounding Robbie's death, including whether Defendant Colling violated ACSO policy or procedure, or whether Robbie's state or federal constitutional civil rights were violated.

104.     Following Robbie's death, Defendants O'Malley, Albany County, and/or the Albany County John Does I-X condoned and/or ratified Defendant Colling's behavior including but not limited to the following:

> a.     Making public statements that they supported Defendant Colling's actions against Robbie;
>
> b.     Publicly dismissing and mocking individuals who questioned Defendant

Colling's fitness for continued duty;

c.      Misleading or obstructing the grand jury or investigators in their investigation of the shooting death of Robbie;

d.      Procuring unduly biased witnesses, including hiring and retaining experts in the biased defense of Defendant Colling at the grand jury proceeding instead of conducting an impartial grand jury proceeding; and

e.      Failing to conduct a reasonable and necessary internal investigation into shooting and/or assembling a shooting review board.

### *Unconstitutional Policy or Custom*

105.    Notwithstanding the bona fide professional and constitutionally compliant law enforcement officer training and instruction concerning use of force at the Wyoming Law Enforcement Academy, Defendants O'Malley and/or Albany County John Does I-X instituted flawed, constitutionally deficient discretionary guidelines for ACSO ("ACSO Guidelines.")

106.    At all times material, the "ACSO Guidelines" contradicted constitutional mandates because they provided officers and deputies of the ACSO—including Defendant Colling—"de facto discretion" to violate clearly established federal law relating to the use of deadly force, Tasers, and required de-escalation tactics.

107.    At all material times, Defendant O'Malley and/or the Albany County John Does knowingly instituted and/or condoned the practices and customs of deputies who would prematurely escalate their use of force instead of first implementing or attempting to implement de-escalation techniques.

108.    Evidence of Defendant Colling's premature escalation of the use of force includes but is not limited to: failing or refusing to call for back up; failing or refusing to wait for back up

when confronting nonviolent, unarmed individuals or mentally ill individuals; failing or refusing to issue oral warnings that force would be used; closing instead of increasing the distance between nonviolent, unarmed individuals and deputies; improperly using Tasers to subdue and detain nonviolent, unarmed individuals or mentally ill individuals; failing to cease the use of force after an individual is subdued or incapacitated.

109. Defendant O'Malley and/or the Albany County John Does knew to a reasonable degree of certainty that Defendant Colling and/or others within the ACSO were prematurely escalating the use of force and failing to implement or failing to attempt de-escalation techniques— ultimately causing unnecessary and excessive use of force against Albany County arrestees and citizens.

110. As a direct and proximate result of the Defendants' unconstitutional acts and omissions, Robbie Ramirez was shot and killed, and Robbie and Plaintiff sustained damages as detailed in the Damages section of this Complaint.

## V. FIRST CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983—Excessive Force—Against Defendant Derek R. Colling, in his Individual and Official Capacities as an Employee of the Albany County Sheriff's Office*

111. Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

112. At all times material herein, Defendant Derek R. Colling, acting under color of state law, and being a "person" under 42 U.S.C. 1983, was within the course and scope of his employment in his capacity as an officer/deputy of the ACSO.

113. Under the Fourth Amendment, as incorporated against the states by the Fourteenth

Amendment, Robbie—a nonviolent, unarmed individual—had a clearly established constitutional right to be secure in his person against excessive force.

114.     Under the application of the specific facts and totality of circumstances, as described herein, Defendant Colling violated Robbie's clearly established constitutional right to be secure in his person against excessive force—especially as a nonviolent, unarmed individual.

115.     Any reasonable law enforcement officer knew or should have known of this clearly established right at the time of Robbie's death.

116.     Defendant Colling did not have a legally valid basis to seize Robbie in the manner and with the level of force used under the circumstances present.

117.     Defendant Colling seized Robbie through objectively unreasonable and excessive deadly force when he deployed the Taser twice, failed to de-escalate the situation, and fatally shot Robbie without warning or reasonable belief that Robbie posed a significant threat to himself or others' safety if not immediately apprehended, arrested or questioned.

118.     The decision to employ deadly force by shooting Robbie three times and killing him when non-lethal alternatives were readily available was excessive under the circumstances.

119.     Defendant Colling's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him.  Any reasonable officer in Defendant Colling's position would have known it was unreasonable to use deadly force against a nonviolent, unarmed individual and that doing so would violate Robbie's clearly established constitutional rights.

120.     Defendant Colling's actions, as described herein, were motivated by malice and/or involved deliberate, reckless or callous indifference to Robbie's federally protected rights. Defendant Colling engaged in these actions and omissions intentionally, willfully, and/or

wantonly, demonstrating a deliberate indifference to and a reckless disregard for Robbie.

121.    Defendant Colling used force in a manner that was disproportionate to the force necessary to arrest or question Robbie.  Any reasonable officer in Defendant Colling's situation would have known, in light of clearly established law, that Defendant Colling's use of force in this situation violated Robbie's Fourth Amendment rights.

122.    Consequently, Defendant Colling deprived Robbie of his right to be free from excessive force and search and seizure under the Fourth Amendment of the United States Constitution.  Defendant Colling's unconstitutional acts and omissions caused Robbie's death.

123.    As a direct and proximate result of the above-mentioned unconstitutional acts and omissions of Defendant Colling, Robbie Ramirez was shot and killed, and sustained damages as detailed in the Damages section of this Complaint.

## VI.    SECOND CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution of the United States of America and 42 U.S.C. § 1983—Inadequate Hiring Procedures—Against Defendants O'Malley, Albany County, and/or Albany County John Does I-X in their Individual and Official Capacities*

124.    Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

125.    At all times material herein, Defendants O'Malley, Albany County and/or Albany County John Does I-X had the direct duty to responsibly investigate, scrutinize and vet Defendant Colling's fitness for employment as a deputy sheriff patrol officer on behalf of Albany County and its citizenry.

126.    At all times material herein, Defendants O'Malley, Albany County and/or Albany County John Does I-X acted with deliberate indifference to the public welfare through their failure

to reasonably investigate, scrutinize and vet Defendant Colling's fitness for employment as a deputy sheriff patrol officer for Albany County.

127. At all times material herein, Defendants O'Malley, Albany County and/or Albany County John Does I-X acted with deliberate indifference to the public welfare by ignoring Defendant Colling's history of excessive force as an officer for the LVMPD. Such clear and obvious evidence of Defendant Colling's excessive force in the line of duty should have reasonably led Defendants O'Malley, Albany County and/or Albany County John Does I-X to conclude that Defendant Colling was highly likely to inflict such abuses of force upon the citizenry of Albany County.

128. The decisions by Defendants O'Malley, Albany County and/or Albany County John Does I-X to hire and retain Defendant Colling constituted deliberate indifference to the clear and obvious risk that Defendant Colling would inflict excessive force against the citizens of Albany County—including Robbie.

129. Therefore, Defendants O'Malley, Albany County and/or Albany County John Does I-X deprived Robbie of his right to be free from excessive force and search and seizure under the Fourth Amendment of the United States Constitution.

130. The unconstitutional acts and omissions of Defendants O'Malley, Albany County and/or Albany County John Does I-X caused Robbie's death.

131. As a direct and proximate result of the aforementioned unconstitutional acts and omissions of Defendants O'Malley, Albany County and/or Albany County John Does I-X, Robbie was shot and killed, and sustained damages as detailed in the Damages section of this Complaint.

## VII.    THIRD CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution of the United States of America and 42 U.S.C. § 1983—Unconstitutional Policy, Practice, Custom, or*

***Usage, Failure to Train, Failure to Supervise, and Ratification—Against Defendants***
***O'Malley, Albany County, and/or Albany County John Does I-X***

132. Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

133. At all times material to this Complaint, Defendants O'Malley, Albany County and/or Albany County John Does I-X instituted policies, practices, customs, and usages that were the direct and proximate causes of the unconstitutional conduct—excessive force and deadly force—alleged herein.

134. Defendants O'Malley and/or Albany County John Does I-X are responsible for the development, application, and enforcement of policies, practices, and customs, as well as all training and supervision of ACSO officers/deputies.

135. Defendants O'Malley and/or Albany County John Does I-X failed to adequately train and supervise Defendant Colling and other officers/deputies on de-escalation tactics and the appropriate level of force against unarmed, nonviolent, non-fleeing, non-resisting individuals who present no threat of imminent harm.

136. Defendants O'Malley and/or Albany County John Does I-X acquiesced in, authorized, condoned, tolerated, affirmed, and ratified the actions of Defendant Colling.

137. The failure of Defendants O'Malley, Albany County and/or Albany County John Does I-X to discipline Defendant Colling for his use of excessive and deadly force against Robbie demonstrates that Defendant Colling's conduct was carried out pursuant to the customs, practices, policies and training of ACSO and Defendant O'Malley. Had Defendant Colling's conduct violated such ACSO standards, Defendants Albany County and O'Malley would have disciplined Defendant Colling.

138.    Had Defendants Albany County and O'Malley adequately supervised and trained ACSO officers/deputies, Defendant Colling would not have utilized Tasers and deadly force against Robbie. Instead, Defendant Colling would have recognized the minimal need for use of force.

139.    The Use of Force section of the ACSO Manual informs the officer/deputy that the purpose of this section is "to establish and prescribe Guidelines for the lawful use of force" – not mandates, not rules, not policy, not procedure, but simply Guidelines that an officer/deputy can use as an arguable defense to excessive use of deadly force charges given that mere Guidelines may, or may not, be complied with. These improper Guidelines bestow undue discretion to the officer/deputy, and also contradict, misstate, and confuse the absolute constitutional use of force obligations and duties that an officer/deputy has. Thus, as written and applied, the improper, unreasonable, illegal and ambiguous Use of Force ASCO Guidelines constitute an unconstitutional custom and practice.

140.    Accordingly, the customs, policies, practices and training of Defendants O'Malley, Albany County and/or Albany County John Does I-X unconstitutionally empower ACSO officers/deputies to use excessive or deadly force against unarmed individuals who do not pose a significant threat of serious bodily injury or death to the officer or others.

141.    42 U.S.C. § 1983 imposes liability on government entities and supervising officials under circumstances that "cause" a law enforcement officer acting under color of state law to violate another's constitutional rights. *Monell v Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978). Thus, "when the execution of a government's policy or custom," including those relating to training and supervision, "inflicts (an) injury," then "the government as an entity is responsible under § 1983." *Id*. at 694.

142.     By failing to institute policies, practices, customs and/or training that provided ACSO officers/deputies with adequate guidance on de-escalation techniques and the use of Tasers and deadly force against unarmed individuals who do not pose a significant threat of serious bodily injury or death to the officer or others, Defendants Albany County and O'Malley caused Defendant Colling to violate Robbie's Fourth Amendment rights.

143.     As a direct and proximate result of these unconstitutional acts and omissions, Defendants O'Malley, Albany County and/or Albany County John Does I-X caused Defendant Colling to shoot Robbie once in the armpit and twice in the back without warning, killing him.

144.     As a direct and proximate result of the aforementioned unconstitutional acts and omissions of Defendants O'Malley, Albany County and/or Albany County John Does I-X, Robbie was shot and killed, and sustained damages as detailed in the Damages section of this Complaint.

## VIII.   FOURTH CLAIM FOR RELIEF

*Wrongful Death: Peace Officer Liability Pursuant to Wyo. Stat. § 1-39-112 Against Defendant Derek R. Colling, Including Respondeat Superior Liability Against Defendant Albany County*

145.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

146.     At all times material herein, Defendant Colling was a "Peace Officer" under Wyoming law in his capacity as a law enforcement officer acting within the scope of his employment, agency and appointment.

147.     When Defendant Colling stopped Robbie for a minor traffic infraction, Defendant Colling owed Robbie a duty of reasonable care to provide for Robbie's safety and medical needs.

148.     At all times material herein, Defendant Colling breached and violated his duty of care to Robbie and Plaintiff as follows:

a.     Negligent care and protection of the safety and well-being of Robbie;

b.      Negligent multiple tasing of Robbie;

c.      Negligent shooting of Robbie when Robbie posed no immediate threat to Defendant Colling's safety or others' safety;

d.      Negligent escalation, aggression and provocation of a physical confrontation with Robbie;

e.      Negligent use of excessive force against Robbie;

f.      Negligent failure to call for back up and wait to peacefully resolve a minor traffic infraction;

g.      Negligent failure to keep his patrol vehicle a reasonable distance from Robbie's vehicle;

h.      Negligent failure to provide necessary and reasonable warnings to Robbie;

i.      Negligent failure in the use of force disproportionate to the force necessary to question or cite Robbie;

j.      Negligent failure to wait for dispatch to reasonably respond to Defendant Colling's effort to obtain information on Robbie's vehicle;

k.      Negligent failure to comply with ACSO protocols, policies, procedures (under the unconstitutional guise of "Guidelines") including but not limited to, vehicle stops; use of deadly force; use of non-deadly force; use of Tasers; use of Taser/firearm simultaneously; and de-escalation requirements and the use of force continuum;

l.      Negligent failure to properly assess the extent of Robbie's medical condition and needs and negligent failure to take the necessary and reasonable actions based thereon; and

m.      Negligent failure to exercise or apply the degree of care, skill and learning ordinarily exercised or possessed by law enforcement officers under the same or similar

circumstances. Defendant Colling failed to act in accordance with the standard of care adhered to by any national and/or state certification board, agency, association or insurance carrier by which it may have been certified and/or insured.

149.     The liability of Defendant Colling is based, in part, on Wyo. Stat. § 1-39-118(b), which provides that any applicable insurance coverage will extend liability and damage amounts to those specified in the policy.

150.     At all times material herein, Defendant Albany County is liable for the aforesaid negligence of Defendant Colling under the doctrine of respondeat superior and agency.

151.     As a direct and proximate result of the above-mentioned unconstitutional and negligent acts and omissions of Defendant Colling, Robbie Ramirez was shot and killed and Plaintiff sustained damages as detailed in the Damages section of this Complaint.

## IX.     FIFTH CLAIM FOR RELIEF

*Wrongful Death: Peace Officer Liability Pursuant to Wyo. Stat. § 1-39-112 Against Defendants  David O'Malley and/or Albany County John Does I-X, Including Respondeat Superior Liability Against Defendant Albany County*

152.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

153.     Defendants O'Malley and/or Albany County John Does I-X owed a duty of reasonable care to Robbie and the public to hire fit and fully qualified law enforcement peace officers, with the additional duties to provide all necessary, reasonable and accepted law enforcement professional training and supervision requisite in the field.

154.     The Defendants O'Malley and/or Albany County John Does I-X breached and violated their duties of professional care owed to Robbie and Plaintiff as follows:

a. Negligent failure to reasonably investigate, scrutinize, test and vet Defendant Colling's fitness and qualification for employment as an ACSO Peace Officer;

b. Negligent failure to reasonably consider Defendant Colling's past pattern of excessive force in shooting deaths and Taser abuse as an LVMPD police officer, ultimately resulting in his termination with the LVMPD;

c. Negligent hiring and retention of Defendant Colling by unreasonably and utterly ignoring the clear and convincing evidence of his unfitness for duty;

d. Negligent failure to properly train and supervise Defendant Colling to avoid excessive deadly force;

e. Negligent failure to properly train and supervise Defendant Colling under appropriate standards, practices and protocols in the following critical areas: vehicle stops; use of non-deadly force; use of Tasers; use of Tasers simultaneously with firearms; use of deadly force; de-escalation requirements; and the use of force continuum;

f. Negligent failure to properly train and supervise Defendant Colling as to the medical needs, care, attention, and treatment required by Robbie and/or other individuals in his circumstances; and

g. Negligent failure to exercise or apply the degree of care, skill and learning ordinarily exercised or possessed by law enforcement supervisory and administrative officials under the same or similar circumstances. Defendants O'Malley, Albany County and/or Albany County John Does I-X failed to act in accordance with the standard of care adhered to by any national certifying board,

agency or association or insurance carrier by which it may have been certified and/or insured.

155.     Defendant Albany County is liable for the aforesaid negligence of Defendants O'Malley, Albany County and/or Albany County John Does I-X under the doctrine of respondeat superior and/or agency.

156.     The liability of Defendants O'Malley and/or Albany County John Does I-X is based, in part, on Wyo. Stat. § 1-39-118(b), which provides that any applicable insurance coverage will extend liability and damage amounts to those specified in the policy.

157.     As a direct and proximate result of the above-mentioned negligent acts and omissions of Defendant O'Malley and/or Albany County John Does I-X, Robbie Ramirez was shot and killed and Plaintiff sustained damages as detailed in the Damages section of this Complaint.

## X.     SIXTH CLAIM FOR RELIEF

### *Exemplary/Punitive Damages Against Defendant Colling, Defendant O'Malley, and Albany County John Does I-X, Individually*

158.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

159.     The gross, reckless, inhumane, tortious, and intentional acts and omissions of Defendant Colling, Defendant O'Malley, and Albany County John Does I-X constitute a willful and wanton disregard for the life and safety of Robbie, thereby "shock[ing] the conscience." To deter the individual defendants and others from committing the same or similar misconduct, which endangers the public's general safety, Plaintiff is entitled to recover exemplary and/or punitive damages.

## XI.     DAMAGES

160. Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

161. As a direct and proximate result of Defendants' unconstitutional, willful misconduct, and negligent acts and omissions set forth herein, Plaintiff, as the duly appointed Wrongful Death Representative for the Estate of Robert Michael Ramirez, deceased; and as the duly appointed Administrator of the Probate Estate of Robert Michael Ramirez, deceased, sustained the following damages:

  a. Hedonic damages, including survival damages for Robbie;

  b. Robbie's pain and suffering at all times material;

  c. Robbie's loss of future earnings capacity;

  d. Robbie's loss of enjoyment of life;

  e. All damages allowed by the laws of the State of Wyoming for the wrongful death of Robbie, including but not limited to:

    i. Pecuniary loss, past and future;

    ii. Relational loss (such as loss of companionship, society and comfort), past and future.

  f. The reasonable costs of burial of Robbie;

  e. Punitive damages against only the defendants named in their individual capacities;

  g. Attorney fees and costs for all claims for relief pursuant to 42 U.S.C. §§ 1983, 1988; and

  h. All allowable pre judgment interest, post judgment interest, costs, expenses, and fees associated with this litigation.

WHEREFORE, Plaintiff prays for judgment against the Defendants in an amount supported by the allegations of this Complaint, and to be proven at trial, and for such other and further relief as the Court deems equitable and proper, as follows:

I.  Judgment against Defendants, jointly and severally, for economic damages in an amount consistent with the allegations contained herein and to be proven at trial;

II.  Judgment against Defendants, jointly and severally, for noneconomic damages in a reasonable sum but not less than seventy-five thousand dollars consistent with the allegations contained herein and to be proven at trial;

III.  Judgment for punitive damages against each individual Defendant in an amount to be determined by the triers of fact;

IV.  An award of attorney fees and costs for all claims for relief within the Petition pursuant to 42 U.S.C. §§ 1983, 1988; and

V.  Judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

DATED March 23, 2021.

/s/ Noah W. Drew
Roy A. Jacobson, Jr., PC (WSB# 5-1791)
Noah W. Drew (WSB# 7-4888)
Claire Fuller (WSB# 7-6071)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street
PO Box 548
Jackson, WY 83001
P:  307-733-7290
F:  307-733-5248
jacobson@spencelawyers.com
drew@spencelawyers.com
fuller@spencelawyers.com

## JURY DEMAND

The Plaintiff, by and through counsel, requests this matter be tried to a jury and submits the requisite fee herewith.

DATED March 23, 2021.

       /s/ Noah W. Drew
Roy A. Jacobson, Jr., PC (WSB# 5-1791)
Noah W. Drew (WSB# 7-4888)
Claire Fuller (WSB# 7-6071)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street
PO Box 548
Jackson, WY 83001
P:  307-733-7290
F:  307-733-5248
jacobson@spencelawyers.com
drew@spencelawyers.com
fuller@spencelawyers.com