

FILED

3:41 pm, 4/9/21

U.S. Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DEBRA R. HINKEL, as the duly appointed Wrongful Death Representative for the Estate of Robert Michael Ramirez, deceased; and as the duly appointed Administrator of the Probate Estate of Robert Michael Ramirez, deceased,<br><br>      Plaintiff,<br><br>   vs.<br><br>DEREK R. COLLING, individually and in his official capacity; DAVID O'MALLEY, individually and in his official capacity as the Sheriff of Albany County, Wyoming; ALBANY COUNTY BOARD OF COMMISSIONERS, a Wyoming body corporate and politic; and ALBANY COUNTY JOHN DOES I-X, real names unknown, in this their individual and official capacities,<br><br>      Defendants. | Case No. 20-CV-166-NDF |

## ORDER GRANTING IN PART DEFENDANT ALBANY COUNTY BOARD OF COMMISSIONERS' AND ALBANY COUNTY JOHN DOES I-X's MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

**THIS MATTER** comes before the Court upon *Defendant Albany County Board of Commissioners' Motion to Quash and Motion for Protective Order* [Doc. 52], which was filed on February 5, 2021. The Motion pertains to third-party subpoenas served upon the Daigle Law Group, Eric Daigle, Non-Lethal Defense and Dave DuBay. Plaintiff Debra Hinkel ("Plaintiff") responded to the Motion on February 19, 2021. ECF Doc. 53. Defendant Albany County Commissioners ("Commissioners") finished briefing on this

matter by filing a Reply on February 26, 2021. ECF Doc. 56. The Motion was expected by the Court. On January 20, 2021, the Court held an informal discovery conference focused on this very issue. During that informal discovery conference, *inter alia*, the Court informed the parties that it would prefer the issue be briefed. ECF Doc. 51. Having now reviewed all motions and being fully apprised of the facts and circumstances of this Motion, the Court finds the following.

## BACKGROUND

This is a civil rights and wrongful death case arising from the shooting of Mr. Robert Michael Ramirez. Plaintiff, Mr. Ramirez's mother, alleges Defendant Derek R. Colling wrongfully took Mr. Ramirez's life on November 4, 2018. ECF Doc. 1. Although the parties disagree as to what exactly happen that day, there is no dispute that on November 4, 2018, Mr. Colling was an Albany County Sheriff that attempted to pull Mr. Ramirez over in Laramie, Wyoming. During the stop, Mr. Ramirez decided to pull his vehicle forward approximately 150 feet to his house. *Id.* at 11. Mr. Colling quickly followed and reengaged Mr. Ramirez in the parking lot of Mr. Ramirez's home. *Id.* at 12. Eventually, a physical altercation broke out between the two men. *Id.* at 13. Mr. Ramirez was tasered twice, shot multiple times and died before the altercation came to an end.

Following the shooting, the Albany County Attorney Peggy Trent (Attorney Trent) began empaneling a grand jury to investigate the shooting and whether it was justified. ECF Doc. 53 pg 3. In preparation for the grand jury, Attorney Trent retained two experts for the purpose of providing testimony before the grand jury; Eric Daigle (Mr. Daigle) and

Dave DuBay (Mr. DuBay). Mr. Daigle of the Diagle Law Group is an expert in the area of use of force by law enforcement and regularly testifies in civil rights litigation. *Id*. Mr. DuBay, President of Non-Lethal Defense, is also an expert in the area of use of force by law enforcement and an expert on the body cameras and tasers used by the Albany County Sheriffs. *Id*. Both apparently provided testimony to the grand jury concerning Mr. Colling's actions as compared to the national standards of use of force by law enforcement officers. *Id*.

In preparation, both experts were given substantial amounts of materials.[1] There were also numerous communications between the experts and Attorney Trent, primarily by way of emails and telephone conferences. ECF Doc. 52 pg 5. After the grand jury hearing, Attorney Trent declared that all criminal investigations were finished and no charges were going to be brought against Mr. Colling. Plaintiff then brought this civil suit, filing her Complaint in September of 2020. ECF Doc. 1. Subsequently, on or about January 4, 2021, Plaintiff served upon Mr. Daigle, the Daigle Law Group, Dave DuBay, and the Non-Lethal Defense subpoenas to produce essentially everything they have related to their role as experts in the grand jury hearing.[2] ECF Doc. 52 pg. 5.

Commissioners believe the materials requested by Plaintiff are work product, protected by the attorney-client privilege, unavailable due to the secrecy of state grand jury laws and are not proportional to the needs of Plaintiff. Plaintiff disagrees. Rather, she

---

[1] See Doc. 52 pages 3 through 7.
[2] Commissioners' brief claims to have a copy of the subpoena attached to their Motion. *See* ECF Doc. 52 pg 5. However, the Court was not provided a copy of the subpoena in question.

believes neither attorney-client nor grand jury secrecy privileges apply and that she has a substantial need for the requested materials.

## Discussion

**1. Grand Jury Secrecy**

Parties seeking grand jury materials must show that the materials they seek are needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222, 99 S. Ct. 1667, 1674, 60 L. Ed. 2d 156 (1979). In *Douglas Oil*, the Supreme Court stated the preferred procedure for such a disclosure would be for the court that held the grand jury proceedings, after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the court where the civil case is pending. *Id.* at 230–31, 99 S.Ct. at 1678–79. The court presiding over the civil case, armed with its special knowledge of the status of the civil action, then should considered the requests for disclosure in light of the grand jury court's evaluation of the need for continued grand jury secrecy. *Id*. In this way, both the need for continued secrecy and the need for disclosure will be evaluated by the courts in the best position to make the respective evaluations. *Id*.

The Tenth Circuit has approved the *Douglas Oil* approach for assessing disclosure of state grand jury materials in federal proceedings. *Stump v. Gates*, 777 F. Supp. 796, 802

(D. Colo. 1991), *vacated on different ground*, 211 F.3d 527 (10th Cir. 2000) (citing *U.S. ex rel. Woodard v. Tynan*, 757 F.2d 1085, 1090 (10th Cir.), *on reh'g*, 776 F.2d 250 (10th Cir. 1985)). Although the courts are cooperative, a state order cannot foreclose a federal court from access to materials if a federal district court determines that disclosure is essential in a case properly before it. *U.S. ex rel. Woodard,* 757 F.2d 1085 (10th Cir). Federal law determines the scope of the privilege covering these materials, and the requirement that plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case. *Id*. at 1098 (citing *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980)). This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered. *Id*. On the other hand, although the state court may determine that the materials are privileged under state law, only the federal court may determine whether the materials are privileged under federal common law. *Id*. In this way the federal interest in disclosure will be properly considered preliminarily to a final decision on the privilege issue. *Id*.

It appears Plaintiff is aware of the above cited case law, which is why she filed a Motion for Release of Grand Jury Materials in the Second Judicial District Court in Albany County, Wyoming. ECF Doc. 53-12. As such, this Court will not infringe on the State Court's process. However, the question here is not whether grand jury secrecy should be

pierced, but rather are the materials sought from Mr. DuBay and Mr. Diagle part of that secrecy?

Plaintiff asserts the experts are not included in the secrecy. Wyoming Statute § 7-5-208 and the nearly identical Wyoming Rule of Criminal Procedure 6(a)(14) provide the boundaries for Wyoming's grand jury secrecy laws. Those provisions read in relevant part as follows:

> (a) Disclosure of matters occurring before the grand jury, other than its deliberations and the vote of any juror, may be made to the district attorney for use in the performance of his duties. The district attorney may disclose so much of the grand jury's proceeding to law enforcement agencies as he deems essential to the public interest and effective law enforcement.
>
> (b) Except as provided in subsection (a) of this section, a juror, attorney, interpreter, stenographer, operator of a recording device or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that a particularized need exists for a motion to dismiss the indictment because of matters occurring before the grand jury.

Wyo. Stat. Ann. § 7-5-208

The federal equivalents of the Wyoming laws are Federal Rule of Criminal Procedure 6 and 18 U.S.C § 3322. The federal authorities are identical with the only exception being they require secrecy from government personnel used by a government attorney for grand jury proceedings in addition to those listed by Wyoming. Fed. R. Crim. P. 6(e)(2)&(3) and 18 U.S.C § 3322.

The Court finds the grand jury secrecy laws, both federal and state, do not apply to Mr. Diagle and Mr. DuBay. They were engaged for the sole purpose of serving as expert witnesses in the state grand jury proceedings. Doc. 52 pg 12. Expert witnesses are outside the scope of any of the previously cited secrecy laws. However, secrecy laws not only demand secrecy from certain individuals, but also include "matters occurring before the grand jury". In this District, "matters occurring before the grand jury" are interpreted to include anything that will reveal what transpired during the grand jury proceedings. *Scott v. United States*, No. 1:12-CR-058-SWS, 2015 WL 12990191, at *1 (D. Wyo. Mar. 27, 2015). The Tenth Circuit has held that when documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings, nor is it an interference with the grand jury as a principal tool of criminal accusation. *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987). The test of whether disclosure of information will violate secrecy rules depends upon "whether revelation in the particular context would in fact reveal what was before the grand jury." *Id*. A reviewing court must find that disclosure is certain to destroy the protections of secrecy laws before it finds a violation of the rule. *Id.* In contrast, revelation of information that has not been submitted to the grand jury does not vitiate those protections for the simple reason that the information was not part of what transpired in the grand jury room. *Id.*

The Court finds the materials requested by Plaintiff do not fall within "matters occurring before the grand jury". Here, Plaintiff is not requesting transcripts of grand jury

testimony, grand jury minutes, or an exhibit list. Instead, she is seeking production of reports and materials that all existed before the grand jury convened. Commissioners admit that almost everything requested by Plaintiff can be discovered from different sources. Doc. 52 pg 23. Clearly, if the materials can be found in numerous places and are held by numerous parties, they are not subject to grand jury secrecy.

Admittedly, the Court understands the experts' reports are a close call. The reports were made for the purpose of explaining the experts' considerations, findings, and opinions. The reports would give insights as to which evidence the experts found most important, what subjects and information the experts might have testified to, and what information the experts spent the most time potentially discussing with the grand jury. Still, the reports do not reveal what actually transpired during the grand jury proceedings. The reports only reveal what two witnesses, who are not bound to secrecy by law, might have discussed with the grand jury.

## 2. Attorney-client Privilege and Work Product

When a federal civil case arises under federal law, Rule 501 of the Federal Rules of Evidence provides that federal common law governs the application of privilege. Fed. R. Evid. 501. To establish application of the attorney-client privilege, the party claiming the privilege must prove there was: (1) a communication, (2) between privileged persons, (3) made in confidence, and (4) for the purpose of seeking, obtaining, or providing legal assistance. *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1244 (D. Wyo. 2016). Privileged

persons include attorneys, clients, and "any of their agents that help facilitate attorney-client communications or legal representation." *Id.*

The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010). The privilege must be strictly constructed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth. *Id*. (quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186 (1980)).

Commissioners argue that the materials sought by Plaintiff from the experts are protected by the attorney-client privilege. ECF Doc. 52 pg 9. Although they extensively cite law, Commissioners entire argument concerning this topic can be found on page twelve of their motion when they say:

> "Much of the material in Mr. Daigle's file may be obtained by the Plaintiff from its original source. Albany County argues that the [requested information is] protected by the attorney-client privilege and/or work product privilege. Mr. Daigle and his firm were engaged for the sole purpose of serving as an expert witness in the secret state Grand Jury proceedings."

ECF Doc. 52 pg 12.

That analysis does not satisfy the burden of establishing the applicability of the attorney-client privilege. Commissioners have proven there were communications between experts in the grand jury hearing and their attorneys. They fail, though, to prove those communications were made in confidence, between privileged individuals, and for the

purpose of seeking, obtaining, or providing legal assistance. Commissioners rely heavily on the fact that the experts, Mr. DuBay and Mr. Daigle, are both attorneys. Communications with experts, who happen to be attorneys, are not attorney-client communications. Nor are the experts acting as agents to help facilitate attorney-client communications.

Commissioners also argue that the materials sought from the experts are work product. Similar to, but separate from, the attorney-client privilege is the Work-Product Doctrine. This doctrine applies to documents and tangible things prepared by a party in anticipation of litigation. *Marcin Eng'g, LLC. v. Founders at Grizzly Ranch, LLC.*, 219 F.R.D. 516, 525 (D. Colo. 2003). Commissioners cite seminal *Upjohn v. United States* to bolster their argument.

In *Upjohn*, after discovery of a foreign subsidiary making illegal payments to government officials, a corporation conducted an internal investigation. *Upjohn Co. v. United States*, 449 U.S. 383, 386, 101 S. Ct. 677, 681, 66 L. Ed. 2d 584 (1981). The companied decided that its in-house general counsel would head the investigation. *Id*. During the investigation, the general counsel created questionnaires for employees, conducted interviews, and submitted a report to federal authorities. *Id*. Upon disclosure, the Internal Revenue Service began its own investigation and ultimately demanded production of all investigatory files held by Upjohn's general counsel. *Id*. at 388. Upjohn refused to produce any of the investigatory files because it believed it to be protected by the attorney-client privilege and constituted work product of attorneys prepared in anticipation of litigation. *Id*. The Supreme Court agreed with Upjohn. The Court decided

that where communications at issue were made by corporate employees to its general counsel, at direction of corporate superiors in order to secure legal advice from counsel, and employees were aware that they were being questioned so that corporation could obtain advice, such communications were protected. Id. at 394. Further, the Court found where notes and memoranda sought by government were work products based on oral statements of witnesses, they were, if they revealed communications, protected by privilege, and to extent they did not reveal communications, they revealed attorney's mental processes in evaluating the communications and disclosure would not be required simply on showing of substantial need and inability to obtain equivalent without undue hardship. *Id*.

Commissioners fail to explain how an *Upjohn* analysis is applicable to the case at hand. At issue today is the discoverability of materials held by two former testifying experts. All parties, including Commissioners, have made it clear Mr. Daigle and Mr. DuBay were specifically retained as experts and not attorneys. There can be no confusion, the experts at issue did not conduct an "internal investigation" and were not retained to acquire information "in anticipation of litigation". They were solely retained to give expert testimony to a grand jury. Although not attorney-client communications, production of communications between experts and attorneys that worked for Commissioners in a prior matter rise interesting issues. Discovery regarding expert witnesses may involve application of the doctrine in some circumstances, but this matter is best addressed with the rules governing the discoverability related to expert witnesses.

Discovery regarding expert witnesses is properly addressed pursuant to Civil Rule of Federal Procedure 26. The rule differentiates between testifying experts and consulting experts, limiting discovery of facts known or opinions held by consulting experts. Fed. R. Civ. Pro. 26(b)(4)(D). Here the Court is not dealing with the classic testifying and non-testifying experts in the civil action before it, but rather, the interesting question of whether a testifying expert retained by a county for a previous state grand jury setting is subject to discovery in a subsequent related federal civil matter. While this Court has been unable to locate guidance on this issue, the Court finds that the prior experts should be protected similarly to a consulting non-testifying expert in civil matters. The rule focuses on the role of the expert in the pending matter, and more specifically if the expert will be providing testimony. The experts which are the focus of Plaintiff's discovery have not been designated to testify in this proceeding but have consulted with the Commissioners' attorneys about the case. In that Mr. DuBay and Mr. Daigle will not be testifying, the Plaintiff need not prepare to cross-examine or rebut their testimony. As such the necessity of discovery is absent, as with the classic consulting expert. The limitations on discovery afforded under the Rule are appropriate.

The protection is distinct from the Work-Product Doctrine and the attorney-client privilege. Rule 26(b)(4) creates a safe harbor whereby facts and opinions of non-testifying consulting experts are shielded from discovery, except upon a showing of exceptional circumstances. *Plymovent Corp. v. Air Tech. Sols., Inc.,* 243 F.R.D. 139, 143 (D.N.J. 2007). Indeed, some courts have construed 26(b)(4) as creating a privilege against disclosure. *Id.*

The idea is that while discovery with respect to testifying experts is essential to allow opposing counsel to adequately prepare for cross-examination, and to eliminate surprise at trial, "there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course litigation should take." *Id*.

Pursuant to Rule of Civil Procedure 26 and the experts' nature being akin to non-testifying expert consultants, the Court finds that the experts' reports and files should be withheld from Plaintiff. Further, any communications between attorneys working on behalf of Defendants and the experts, regardless of form, should also be withheld from Plaintiff. As stated previously, this Court will defer to the state court regarding the disclosure of any grand jury proceedings.

Lastly, the Court finds that Plaintiff has not established substantial need or shown exceptional circumstances requiring discovery of the experts' files and reports. Plaintiff claims all materials relevant to the grand jury proceeding is crucial in answering whether the County or its agents explicitly or tacitly condoned Mr. Colling's behavior. Doc. 53 pg 10. Plaintiff is afraid that Defendants will use the fact that an impartial grand jury declined to bring criminal charges against Mr. Colling as a defense in this civil action and that she will be sandbagged without the ability to investigate the grand jury proceedings. *Id.* pg 11. As to those concerns, the grand jury findings are not relevant to this civil action. The grand jury's decision to not bring criminal charges applies standards inapplicable in this civil proceeding.

Other than worry of being sandbagged, the Court sees no other need for discovery of the experts' reports and files. Plaintiff has not provided authority suggesting Commissioners' choosing of specific experts in a grand jury proceeding may constitute an authorization, condonation, or ratification of excessive force. Nor has the Court found such authority. Also, Plaintiff and all the Defendants will have experts in this civil matter discussing identical topics and using the same materials as Mr. DuBay and Mr. Daigle did in the state grand jury proceeding. The Court finds a desire to investigate the state grand jury proceeding in this matter does not constitute substantial need or an exceptional circumstance to overcome the privilege protecting the opinions and consultations for these non-testifying experts.

### 3. Scope of Discovery

Courts have held that a subpoenaing party may make discovery requests under Rule 45 that fall within the general scope of discovery as defined by Rule 26. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003). Pursuant to Rule 26, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Relevance is broadly construed to contemplate "discovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised in a case." *Sinclair Wyo. Refining Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2017 WL 10309306, at *4 (D. Wyo. Oct. 31, 2017) (quoting *Anaya v. CBS Broad., Inc.*,

251 F.R.D. 645, 649–50 (D.N.M. 2007)). The party seeking discovery bears the burden of proving relevance. *Id.* at *5. However, when the discovery request is facially relevant, the burden is on the party resisting discovery to establish: (1) that the request is not relevant or (2) that the relevance is so marginal that the potential harm outweighs the presumption favoring discovery. *See Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403 (D. Wyo. 2017).

When analyzing proportionality, the Court looks at "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The burden to prove disproportionality is on the party resisting discovery. *Sinclair Wyo. Refining Co.*, 2017 WL 10309306, at *5. These same considerations and burdens apply when determining what is discoverable through a Rule 45 subpoena.

According to the Federal Rules of Civil Procedure, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that" either "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).[3] To determine whether a subpoena presents an undue burden, courts consider:

(1) relevance of the information requested;
(2) the need of the party for the documents;

---

[3] There are other times when the court must quash or modify a subpoena as well, but those are not at issue in this dispute. *See* Fed. R. Civ. P. 45(d)(3)(A).

   (3) the breadth of the document request;
   (4) the time period covered by the request;
   (5) the particularity with which the party describes the requested documents; and
   (6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Goodyear Tire & Rubber Co.*, 211 F.R.D. at 662 (listing the exact same factors without numbering them). A subpoena may subject a party to undue burden where it is facially overbroad. *Wiwa*, 392 F.3d at 818. Additionally, "if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*; *see also Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663 (explaining that "the status of a person as a non-party is a factor that weighs against disclosure").

  Generally, only the party to whom a subpoena is directed has standing to file a motion to quash the subpoena. *Clower v. GEICO Inc.*, No. CIV 12–0472 JB/WD, 2013 WL 1897832, at *5 (D.N.M. Apr. 16, 2013). However, an exception to that rule exists where a party is moving to quash a subpoena that infringes on the movant's rights, even if that subpoena is addressed to another. *Id.* The moving party has a burden to demonstrate good cause or to demonstrate a privilege should be protected. *Clower*, 2013 WL 1897832, at *5.

 a. **Factual Materials**

  The prior discussion has addressed the formulation and expression of the experts' opinions. Yet, Plaintiff's discovery request is broader in that it seeks the factual materials provided to the experts. These materials are clearly relevant and the Plaintiff is entitled to

receive those materials. The question seems to be: "from where shall the Plaintiff obtain such materials?". Commissioners argue Plaintiff has already received much of what she has requested from other sources. Commissioners also argue that anything Plaintiff does not already have she could secure from original sources. In her response, Plaintiff claims she has continually sought production, to no avail, of recorded audio and video of the event at issue in native format. She further claims other desired materials are crucial for answering whether the Defendants condoned Mr. Colling's behavior.

Plaintiff has voiced her concerns with the failure of Defendants, and others, to produce native formats of all recorded audio and video concerning the event. Such a request is undoubtedly relevant and proportional to the issues here. The Court is unimpressed such a request needed to even be made. To that end, any video or audio recording relevant to the event at issue held by Mr. DuBay or Mr. Daigle must be produced. Commissioners shall confirm that all other materials provided to the experts have been produced to Plaintiff from other sources and any such factual materials not so produced shall be provided to Plaintiff.

### b. Protection Order

Courts are granted broad discretion when determining how discovery should be controlled and limited. *Homeland Ins. Co. of New York v. Goldstein ex rel. Powell Valley Healthcare, Inc.*, No. 1:15-cv-00031-ABJ, 2019 WL 1928483, at *1 (D. Wyo. Apr. 30, 2019). The Federal Rules of Civil Procedure state that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden to show good cause for the protective order. *Clower*, 2013 WL 1897832, at *6.

Due to their privileged nature, the Court finds good cause to grant Commissioners' request for a Protection Order with respect to certain communications at issue and the experts' files and reports. The Protection Order shall protect from disclosure communications between Mr. DuBay and Mr. Daigle with attorneys working on behalf of the Defendant, regardless of form. The Protection Order shall also extend to Mr. DuBay's and Mr. Daigle's expert work files and reports. The Court declines to include other materials because Plaintiff is entitled to factual and evidentiary materials. These materials include, but are not limited to, all audio or video recordings held by the experts. Defendant must ensure reception of such audio and video recordings, along with all other factual materials that were provided to the experts if not already in Plaintiff's possession.

## Conclusion

The Court finds that, considering the circumstances, Mr. DuBay and Mr. Daigle should be afforded the same protections as a consulting non-testifying expert witness in a civil matter. As such, their communications with attorneys working on behalf of Defendants shall not be produced and are subject to protection. Further, Mr. DuBay's and Mr. Daigle's expert files and reports shall not be produced and are subject to protection for the same reasons. Accordingly, the subpoenas at issue are so modified.

However, Mr. DuBay and Mr. Daigle must disclose any audio or video relevant to the event in question that was produced to them. Importantly, the audio and video must be produced to Plaintiff in the format it was produced to Mr. DuBay and Mr. Daigle. Also, Plaintiff is entitled to any other factual materials held by the experts not yet produced to her. Commissioners must confirm Plaintiff receives those materials.

**IT IS SO ORDERED**.

DATED this 9th day of April, 2021.

_____
MARK L. CARMAN
UNITED STATES MANGISTRATE JUDGE