IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING



3:11 pm, 6/30/21
U.S. Magistrate Judge

DEBRA R. HINKEL, as the duly appointed )
Wrongful Death Representative for the Estate )
of Robert Michael Ramirez, deceased; and as )
the duly appointed Administrator of the )
Probate Estate of Robert Michael Ramirez, )
deceased, )
)
        Plaintiff, )
)
    vs. ) Case No. 20-CV-166-NDF
)
DEREK R. COLLING, individually and in )
his official capacity; DAVID O'MALLEY, )
individually and in his official capacity as the )
Sheriff of Albany County, Wyoming; )
ALBANY COUNTY BOARD OF )
COMMISSIONERS, a Wyoming body )
corporate and politic; and ALBANY )
COUNTY JOHN DOES I-X, real )
names unknown, in this their individual )
and official capacities, )
)
        Defendants. )

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

**THIS MATTER** comes before the Court upon Debra R. Hinkel's ("Plaintiff") *Motion to Compel Albany County Board of Commissioners to Produce Derek Colling's Psychological Records* [ECF Doc. 82], which was filed on June 8th, 2021. Defendant Derek Colling ("Colling") responded on June 15th, 2021. ECF Doc. 84. Defendant Albany County Commissioners ("Albany County") responded on June 16th, 2021. ECF Doc. 85. Plaintiff finished the briefing of this matter by filing her reply on June 19th, 2021. ECF Doc. 89. The

1

Motion was expected by the Court. On June 4th, 2021, the Court held an informal discovery conference focused on this issue. Following the informal discovery conference, the Court entered a Minute Order scheduling deadlines for this motion. ECF Doc. 79. Lastly, on June 24, 2021, the Court reviewed the post-shooting psychological evaluation in-camera. Having now reviewed all motions and being fully apprised of the facts and circumstances of this Motion, the Court finds the following:

## **BACKGROUND**

This is a civil rights and wrongful death case arising from the shooting of Mr. Robert Michael Ramirez. Pursuant to Plaintiff's negligent hiring and negligent retention claims against Albany County and Defendant David O'Malley ("O'Malley"), she seeks discovery of two psychological evaluations Colling underwent that were required during his employment; first on October 5th, 2012 as a prerequisite to employment and a second on January 17th, 2019 as a prerequisite to return to active duty after killing Robert Ramirez. ECF Doc. 82 pg 1. It is Plaintiff's position that these evaluations are highly relevant to the matter at hand, not privileged by the psychological-patient privilege, and production would not violate Colling's constitutional rights. Colling's argument against production of his evaluations focuses on his constitutionally-based privacy interests in personal matters. He argues that pursuant to the Tenth Circuit's *Colorado Test*, the Court should find he legitimately expected the evaluations to remain private even though the results were shared with his employer. Albany County's argument focuses solely on the applicability of the psychological-patient privilege.

## Law

1. **Scope of Discovery**

Under Rule 26 of the Federal Rules of Civil Procedure parties to a lawsuit "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The purpose of the rule is to allow broad discovery of relevant information, even if that information is not admissible at trial. *Id.*

Relevance is broadly construed to contemplate "discovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised in a case." *Sinclair Wyo. Refining Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2017 WL 10309306, at *4 (D. Wyo. Oct. 31, 2017) (quoting *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007)). The party seeking discovery bears the burden of proving relevance. *Id.* at *5. However, when the discovery request is facially relevant, the burden is on the party resisting discovery to establish: (1) that the request is not relevant or (2) that the relevance is so marginal that the potential harm outweighs the presumption

favoring discovery. *See Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403 (D. Wyo. 2017).

When analyzing proportionality, the Court looks at "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The burden to prove disproportionality is on the party resisting discovery. *Sinclair Wyo. Refining Co.*, 2017 WL 10309306, at *5.

Rule 37 provides enforcement mechanisms for Rule 34 and other discovery rules. According to Rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the court to compel the opposing party to respond. Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 37 prescribes sanctions for parties who fail to comply with discovery until after a motion to compel is filed against them. With some exceptions, when a party is compelled to provide discovery, or provides the discovery only after a motion to compel has been filed against it, Rule 37(a)(5) requires the court to order the responding party to pay the movant's reasonable expenses incurred in filing the motion. However, where parties have taken legitimate positions, courts generally conclude that justice requires that each party be responsible for their own fees and costs. *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017).

## 2. Psychotherapist Privilege

United State Supreme Court recognized the "federal psychotherapist privilege" in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Like most privileges, the psychotherapist privilege is rooted in the imperative need for confidence and trust. *Id.* at 10. The Jaffee court discussed the extremely sensitive nature of the discussions between a patient and his/her therapist and the importance of the confidence and trust necessary to effective care. *Id.* at 10. It would be difficult to obtain such free communication without the confidence of the patient that such information would remain private. The nature of such communications, if disclosed, would often lead to embarrassment, humiliation and disgrace. The Jaffee court further recognized that the subject privilege would serve public interests. "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less that its physical health, is a public good of transcendent importance." *Id.* at 11. The privilege extends to confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy. *United States v. DeLeon*, 426 F. Supp. 3d 878, 906 (D.N.M. 2019). That is, the communications must be made in the course of diagnosis and treatment. *Id.* at 905. Like other testimonial privileges, the patient may of course waive the protection. *Id.* (citing *Jaffee*, 518 U.S. at 15 n.14).

There has been a great deal of litigation concerning discovery of police officer's communication with therapists, regardless if the interaction was compulsory or voluntary.

5

The courts seemingly agree on two key rules. First, the privilege does in fact attach to counseling sessions that an employer requires. *See Speaker ex rel. Speaker v. County of San Bernardino,* 82 F. Supp. 2d 1105 (C.D. Cal. 2000). Second, the inquiry turns on whether or not the officer knew that the counselor's report would be shared with his employer, i.e. if the privilege has been waived. *See Speaker ex rel. Speaker v. County of San Bernardino,* 82 F. Supp. 2d 1105 (C.D. Cal. 2000), *Barrett v. Vojtas,* 182 F.R.D. 177 (W.D. Pa. 1998), *Boudreau ex rel. Boudreau v. Ryan,* No. 00 C 5392, 2001 WL 1001156, at *4 (N.D. Ill. Aug. 24, 2001), *Phelps v. Coy,* 194 F.R.D. 606, 608 (S.D. Ohio 2000).

There are two ways the privilege may be waived. First, a party waives the privilege by placing his or her medical condition as issue. *Fisher v. Sw. Bell Tel. Co.,* 361 F. App'x 974, 978 (10th Cir. 2010). Second, a party waives the privilege if he or she has no reasonable expectation that the communications will remain private. *Dorato v. Smith,* 163 F. Supp. 3d 837, 886 (D.N.M. 2015). If a party is informed that evaluations, tests, therapy session notes, or any other information will be disclosed to his or her employer, that party cannot have a reasonable expectation of privacy. *Id.*

### 3. Due Process

Colling seeks to protect the pre-employment evaluation pursuant to the Fourteenth Amendment due process protection of personal privacy. Certain forms of personal information possessed by the state is protected from disclosure when a legitimate expectation exists that the information will remain private. *Mangels v. Pena,* 789 F.2d 836,

6

839 (10th Cir. 1986). The Tenth Circuit has acknowledged that police officers have a right to prevent disclosure of personal matters within police personnel and investigative files. *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432 (10th Cir.1981). To determine whether these personal matters fall within the "zone of confidentiality", the court must apply the "Colorado Test". Under the test, the court must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner. *Id.* at 435 (citing *Martinelli v. District Court in and for the City and County of Denver*, 199 Colo. 163, 612 P.2d 1083, 1091 (1980)).

## Discussion

### 1. Pre-employment Evaluation

With respect to the pre-employment evaluation, the Court is satisfied that the requested record is within the scope of discovery. The evaluation is relevant because it is reasonably calculated to lead to the discovery of admissible evidence regarding whether Colling was prone to use excessive force and whether the other defendants were aware of that propensity. This was information held by the County and utilized in its decision to hire Colling, and as such is relevant to Plaintiff's claims of negligent hiring. It is also proportional when considering the importance of civil right, the amount in controversy and the relatively low burden of production to the Defendants.

7

Next, the Court finds that the pre-employment evaluation is not protected by the psychotherapist privilege as Colling did not enjoy any expectation of privacy. The testing and evaluation was performed at the request and for the benefit of the Albany County Sheriff's Office and Colling was fully aware that the information would be shared with that office. Colling applied for a position with the Albany County Sheriff's office and undertook the required testing to obtain the position. He was fully aware that the evaluation would result in a report outlining his psychological suitability to be a law enforcement officer. Colling was certainly aware that the report, along with accompanying evaluations, tests, therapy session notes, or other information collected by the therapist, would be disclosed to his employer, thereby eliminating any reasonable expectation to privacy he might have had. Illustrating just how aware of this disclosure Colling was, he went as far as signing a release of information form which provided for broad disclosure of all information obtained during his pre-employment investigation. ECF Doc. 82-4. While the form did not specifically address psychological testing, it does support the lack of confidentiality related to the information obtained in regard to the hiring decision of the Sheriff's Office.

Colling relies heavily upon *Mason v. Stock*, 869 Supp. 828 (D. Kan. 1994). In *Mason*, a police officer was involved in a physical altercation and the court was faced with a discovery issue concerning the officer's personnel files in an excessive force case much like we are today. Ultimately, the Court applied the Colorado Test and found an officer's psychological evaluation was so highly personal and sensitive in nature that it deserved to

be safeguarded. In applying the Colorado Test and relying on *Mason*, Colling simply determines he had a legitimate expectation of privacy even though his psychiatric evaluation was disclosed to his employer. ECF Doc. 84 at pg 4. His conclusory statements are of no value for several reasons.

First, the District Court of Kansas has itself casted doubt on validity of *Mason*. *See Utter v. Thompson*, No. 11-2360-KHV, 2013 WL 875506, at *2 (D. Kan. Mar. 7, 2013). Second, even assuming *Mason* remains good law, the District of Kanas has itself held that an officer has no reasonable expectation of privacy with respect to pre-employment psychiatric evaluations when the officer knows the information will be disclosed to the police department. *Id*. Finally, the Kansas court has held disclosure of psychiatric evaluations serves a compelling state interest because privileges are narrowly, not expansively construed, and disclosure can be done in a least intrusive manner with a protection order in place. *Id*.

This Court reaches a similar outcome when applying the Colorado Test. Regarding the pre-employment psychiatric evaluation, the *Utter* reasoning is persuasive. Colling had no reasonable expectation of privacy with respect to his pre-employment psychiatric evaluation. He knew his employer would be provided information about the evaluation and he went as far as signing a release authorizing such a disclosure. Also, the Court finds disclosure of pre-employment psychiatric evaluations serves a compelling state interest in ascertaining the truth, and that interest overrides any legitimate expectations of privacy Colling might have had. "Section 1983 represents a balancing feature in our governmental

structure whereby individual citizens are encouraged to police those who are charged with policing us all... [t]hus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Dorato*, F. Supp. 3d at 891 (D.N.M. 2015) (citing *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wis.1972)). Were law enforcement agencies to hire individuals who were shown by such testing to be unsuited for police work and then withhold such information from discovery, it would become unfairly difficult for plaintiffs to prove negligent hiring. The trier of fact must have access to the full body of information available in regards to the hiring decision. That, and the fact that disclosure can be done in a least intrusive manner considering the protection order that is already in place, supports a finding by the Court that the pre-employment evaluation must be produced.

### 2. Post-shooting Evaluation

The inquiry is more difficult when addressing the post-shooting evaluation. First, the psychotherapist privilege does apply to the post-shooting evaluation. Unlike pre-employment evaluation, post shoot is addressing multiple issues, including the impact of the shooting on the officer. It is true that the evaluation is also focused on the ability of the officer to return to regular duties, but that concern includes the ability of the officer to deal with the trauma of being involved with a fatal shooting. As such, the session addresses both therapy for the officer and the department's questions of fitness to return to duty. It is important that our officers have confidence and trust in post-shooting counseling sessions for the reasons set forth in. Jaffee, 518 U.S. at 10 (1996). After traumatic events like a

shooing, our officers need to know they can speak frankly and honestly to those capable of providing help. As stated earlier, the psychotherapist privilege is rooted in the imperative need for confidence and trust. *Id.*

The inquiry, then, is whether Colling has waived the privilege. The same inquiry is needed when assessing the application of the Colorado Test. That is, does Colling have a reasonable expectation of privacy in his post-shooting evaluation? The absence of an expectation of privacy defeats an application of the Colorado Test and would clearly constitute a waiver of the privilege. Simply put, like any type of privilege inquiry, disclosure to a third party abolishes protections.

The case law is clear, an officer does not have an expectation of privacy, and therefore the privilege does not attach and the Colorado Test is failed, if the officer knows the therapist will produce a report or an evaluation to his employer. *Dorato*, 163 F. Supp. at 878 (D.N.M. 2015) (citing *Barrett v. Vojtas*, 182 F.R.D. 177 (W.D.Pa.1998)). Much like his pre-employment release of information, Colling signed a release of information pertaining to his post-shooting evaluation that specifically authorizes disclosure to Defendant O'Malley and the Albany County Sheriff's Office.[1] Clearly, this is not a situation where named defendants protected a post-incident evaluation by ensuring the officer retained an expectation of privacy. *See Caver v. City of Trenton,* 192 F.R.D. 154 (D.N.J. 2000) ("[The therapist] does not disclose any confidential information but merely

---

[1] The Court requested, and was provided for an in-camera inspection, a copy of the release signed by Colling for the post shooting evaluation.

gives a 'Pass' or "Fail' recommendation of fitness for duty to the police department"). Unquestionably, Colling did not have a reasonable expectation of privacy regarding the post-shooting evaluation.

However, the Court questions the relevance of the post-shooting evaluation. Plaintiff argues that due to her claims of 1) unconstitutional policy, practice, custom, or usage, 2) failure to train, 3) failure to supervise, and 4) ratification, the post-shooting evaluation could reasonably lead to relevant information. However, the post-shooting evaluation focused on whether Colling was mentally fit to return to work. It has no bearing whatsoever on whether Colling's superiors condoned his actions or were somehow liable for any alleged short comings during the incident. The Court also fails to see how Colling's emotional reaction to the shooting or how Colling's ability to return to work would be relevant. Plaintiff argues that because Colling is the only eye-witness of the shooting, any evidence that goes to his propensity for truthfulness and credibility is crucial to this case. The Court is not persuaded by her argument. The evaluation provides a synopsis of what topics were discussed by the therapist and Colling, generally explains what Colling had to say about each topic, and then reaches a determination that Colling is fit to return to work. The evaluation does not and cannot weigh on his propensity for truthfulness or credibility. There are other evidentiary sources, both more proportional and relevant, that may be used when assessing Colling's propensity for truthfulness and credibility.

## Conclusion

The Court finds that all records pertaining to Defendant Colling's pre-employment psychological evaluations are discoverable pursuant to Federal Rule of Evidence 26 and therefore shall be produced in compliance with the protective order in place [ECF Doc. 73].

The Court finds that all records pertaining to Defendant Colling's post-shooting psychological evaluations, although the privilege associated with these records was waived, are not discoverable pursuant to Federal Rule of Evidence 26 and therefore shall not be produced.

The Court finds that the parties have taken legitimate positions on these issues. As such, justice requires that each party be responsible for their own fees and costs associated with the filing and briefing of this motion.

**IT IS SO ORDERED.**

DATED this 30th day of June, 2021.

_____
MARK L. CARMAN
UNITED STATES MANGISTRATE JUDGE